No. 23-2669

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

JOSE MONTANEZ,

Plaintiff-Appellant,

v.

PAULA PRICE, et al.,

Defendants-Appellees.

On Appeal from the U.S. District Court
for the Middle District of Pennsylvania,
No. 3:22-CV-01267, Hon. Robert D. Mariani

**APPELLANT'S OPENING BRIEF**

Samuel Weiss
RIGHTS BEHIND BARS
416 Florida Avenue NW
   #26152
Washington, DC 20001
202-455-4399
sam@rightsbehindbars.org

*Counsel for Plaintiff-Appellant*

## TABLE OF CONTENTS

ARGUMENT ................................................................................................................1

    I.    Montanez Stated a Claim Under the ADA. ............................................1

        a)    Montanez sued the correct defendant. ...............................................1

        b)    Montanez's disability law claims were not based on medical malpractice. ........3

    II.    The District Court Erred in Dismissing Montanez's Eighth Amendment Claims. .....................................................................................................................4

    III.    Even Were This Court to Agree with the District Court's Conclusions, Montanez Should Be Given an Opportunity to Amend. ...............................................6

CONCLUSION ..........................................................................................................10

CERTIFICATE OF COMPLIANCE .......................................................................11

CERTIFICATE OF SERVICE .................................................................................12

# TABLE OF AUTHORITIES

<u>Cases</u>

*Bryant v. Madigan*. 84 F.3d 246 (7th Cir. 1996) ....................................................... 4

*Connecticut et al. v. Sandoz, Inc. et al.*, 2:20-cv-03539 (E.D. Pa. Jul 20, 2020) ....................... 9

*Davis v. New Jersey Dep't of Corr.*, No. 10-cv-6439, 2011 WL 5526081 (D. N.J. Nov. 14, 2011) ........................................................................................................ 2

*Durham v. Kelley*, 82 F.4th 217 (3d Cir. 2023) ................................................... 1, 2

*Estelle v. Gamble*. 429 U.S. 97 (1976) ............................................................... 6

*Harpo v. U.S. Marshal Serv. Deputy Supervisor*, No. 1:21-cv-4827, 2022 WL 22329121 (N.D. Ga. Feb. 1, 2022 ...................................................................... 10

*Isley v. Beard*, 200 F. App'x 137 (3d Cir. 2006) .................................................. 3

*Tennessee v. Lane*, 541 U.S. 509 (2004) ............................................................ 1

*United States v. Dupree*, 617 F.3d 724, 728 (3d Cir. 2010) ...................................... 7

*United States v. Georgia*, 546 U.S. 151 (2006) .................................................... 1

*Will v. Michigan Department of State Police*, 491 U.S. 58 (1989) ............................... 2

<u>Statutes</u>

42 U.S.C. § 1983 ........................................................................................ 2

<u>Rules</u>

Fed. R. Civ. P. 15(a)(1)(B) ............................................................................ 9

# ARGUMENT

## I. Montanez Stated a Claim Under the ADA.

The Government Defendants offer two reasons that Montanez failed to state a claim under the ADA. Neither was the basis for the district court's decision. *See* App. 20–22. First, they suggest that Montanez did not sue the correct defendant because none of the individual defendants can be sued in their individual capacities under disability law. This is probably true but irrelevant. Second, they suggest that Montanez only alleged deprivations of medical care, which are not actionable under the ADA. This is not true.

*a) Montanez sued the correct defendant.*

Defendants argue that Title II of the ADA does not permit suit against state officials in their individual capacities. Ans. Br. I 25–26. Montanez did not argue otherwise.

Cases brought under Title II of the ADA are against "public entities." When suing the state, the appropriate defendant is therefore the state itself. *See, e.g.*, *United States v. Georgia*, 546 U.S. 151 (2006); *Tennessee v. Lane*, 541 U.S. 509 (2004). In practice, courts often characterize these cases as against the relevant state agency, here the Pennsylvania Department of Corrections. *See, e.g.*, *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998); *Furgess v. Pennsylvania Dep't of Corr.*, 933 F.3d 285, 288 (3d Cir. 2019). Other times, courts characterize these case as against defendants in their official capacities. *See, e.g.*, *Durham v. Kelley*, 82 F.4th 217, 227 (3d Cir. 2023). As this Court

1

explained in *Durham* by quoting *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989), a "suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." 82 F.4th at 227 n.33. These three characterizations—the state, the state agency, and state officials in their official capacities—are often used interchangeably and without elaboration because they all mean the same thing: the defendant is the state.

Montanez sued the Commonwealth of Pennsylvania. App. 7 n.2; App. 35. When the district court dismissed the Commonwealth because it was not a "person" under 42 U.S.C. § 1983—a correct conclusion as to Montanez's constitutional claims but not to his disability claims—Montanez attempted to add the Commonwealth back in, clarifying that it was the appropriate defendant for his ADA claim. App. 7 n.2. In short, Montanez not only sued the right defendant but explained to the court his correct reason for doing so. In arguing that Montanez has failed to name the right defendant for his ADA claim, the Government Defendants simply ignore that Montanez named Pennsylvania in his complaint.

Montanez also brought claims against prison officials in their official capacity. As the district court recognized, this too would have been sufficient even if he had not named the Commonwealth in his complaint. App. 20. Naming the Commonwealth and the prison officials in their official capacities was redundant. *See, e.g., Davis v. New Jersey Dep't of Corr.*, No. 10-cv-6439, 2011 WL 5526081, at *10 (D. N.J. Nov. 14, 2011)

(dismissing official capacity defendants in ADA claim as "redundant in this case because such claims are equivalent to a claim against co-defendant the Department"). Montanez therefore did more than he needed to by naming the correct defendant, the Commonwealth of Pennsylvania, twice over.

### b) *Montanez's disability law claims were not based on medical malpractice.*

The Government Defendants argue that Montanez merely "alleged provision of inadequate medical care," which this Court in *Iseley v. Beard* held did not state a claim. 200 F. App'x 137, 141 (3d Cir. 2006). The plaintiff in *Iseley* brought both a constitutional claim and a disability law claim when a prison failed to provide him hepatitis C treatment. This Court held that the plaintiff had failed to allege that he was denied any programs or services because of his disability but rather that he only alleged failure to treat his disability.

By contrast, Montanez listed several services to which he lacked meaningful access. *See* Op. Br. 12–18. An unexhaustive list includes toileting; health care;[1] sleeping;

---

[1] Although redundant to reach the outcome in this case, concluding that health care is a "service" is both an easy conclusion of statutory interpretation and does not conflict with the doctrine discussed below, which is that plaintiffs may not bring disability law claims sounding in medical malpractice by seeking medical care as a proposed accommodation for their disability. *Yeskey*, 524 U.S. at 210 (listing "medical services" as services, programs or activities under the ADA); *Georgia*, 546 U.S. at 157 (listing "medical care" as a prison service). Making a prisoner walk to and from his medical appointments despite a serious injury, causing brutal pain, is not "medical malpractice," as it is distinct from any issues in the provision of medical care and an appropriate accommodation would be humane transportation or the provision of a mobility aid, not different medical treatment.

mobility; hygiene; and meal service. *Id.* Montanez explained at length why those constitute "services" of the prison in his opening brief and Defendants have provided no response.

This Court recently reversed a district court for making this same mistake on behalf of the same defendant, the Commonwealth of Pennsylvania. In *Furgess v. Pennsylvania Department of Corrections*, a prisoner with leg braces brought an ADA claim alleging that he could not safely get in and out of a prison shower. 933 F.3d 285, 288 (3d Cir. 2019). The district court in *Furgess* deemed a shower not a "service" by relying on the same authority cited in *Iseley*, the Seventh Circuit's opinion in *Bryant v. Madigan*, 84 F.3d 246 (7th Cir. 1996). *Id.* The district court held that the failure to provide an accessible shower was medical treatment, not a failure to accommodate disabilities. *Id.*

This Court reversed. "[C]omplaints about not being provided an accessible shower are not allegations of medical malpractice or disagreements about medical treatment. They are requests for reasonable accommodations so that inmates with disabilities can take a shower—just like able-bodied inmates" *Id.* at 291. Montanez's complaints about his failure to access a significant number of Defendants' services compel the same conclusion here.

## II. The District Court Erred in Dismissing Montanez's Eighth Amendment Claims.

Montanez explained in his opening brief that his allegations supported the claim that Medical Defendants were deliberately indifferent to his serious medical needs. Op.

4

Br. 21–26. Medical Defendants' response was conclusory: "Medical Appellees made medical decisions and evinced medical results that dissatisfied him and he now seeks to hold them liable based on his dissatisfaction." Ans. Br. II 25. While "Montanez's disagreement over his course of treatment may be of personal concern to him, disagreement and dissatisfaction are legally insufficient bases to state a claim for deliberate indifference." *Id.* They made no attempt to go defendant-by-defendant and explain why this conclusion—that Montanez alleges mere good-faith medical disagreement rather than a knowing disregard of serious medical needs—applies to each.

As explained in Montanez's opening brief, a review of Montanez's allegations, some from the First Amended Complaint and more from his oppositions, demonstrate that he alleged more than good-faith disagreement but a knowing disregard of serious medical needs.

- Nurse Wagman provided no medical treatment and laughed at Montanez for wanting to go to the hospital and forced him out of his wheelchair and made him crawl paralyzed into his filthy cell. App. 38.

- Dr. Mahli asked Montanez to walk, watched him drag himself across the floor from outside his cell, heard that Montanez was urinating on himself, and then left without providing care. *Id.*

- Dr. Preston denied him the proper pain medication, even after he fell and herniated a disc in his back. App. 39.

- R. Ellers lied about the results of his X-ray and the existence of his herniated disc, which delayed his treatment for it. *Id.*

5

- Upon returning to SCI Huntington, Dr. Edwards refused to give him the pain medication that he needed and refused to provide an MRI to diagnose his back problems. App. 40.

- Dr. Preston, Nurse Nalley, and Dr. Edwards continuously denied Montanez the physical therapy he needed in order to regain the ability to adequately walk. App 39–40, 55, 65, 71–72.

Nowhere in Montanez's initial allegations or his later elaboration is there the slightest suggestion of disagreement as the proper course of medical treatment. As Montanez explained in his opening brief, and the Defendants have not rebutted, presuming good-faith medical disagreement in the face of allegations such as the above would entirely obviate *Estelle v. Gamble*. 429 U.S. 97 (1976).

To take a particularly striking example, Dr. Mahli left Montanez paralyzed on the floor of his cell urinating on himself for three days. He came to Montanez's cell door, learned of the situation, refused to even step inside to examine him, and left him there. Defendants argue that even taking every inference in favor of Montanez, this was merely a good-faith dispute between Montanez's preferred course of treatment (help) and Dr. Mahli's (doing nothing) that this Court must resolve in favor of Dr. Mahli because of his medical expertise. Fortunately, the law does not support such a result. *See* Op. Br. 25–26.

### III. Even Were This Court to Agree with the District Court's Conclusions, Montanez Should Be Given an Opportunity to Amend.

Even if this Court holds that Montanez's operative complaint fails to state claims under the ADA and Eighth Amendment, the district court erred in failing to grant

Montanez leave to amend. Montanez was required to fit his allegations into under four handwritten pages. Op. Br. 27. Even if reading them to not state a claim on their own is possible, reading them to not *conceivably* state a claim with more elaboration is not. Op. Br. 26–28. In fact, Montanez did elaborate. Operating *pro se* and believing he had more space, Montanez elaborated on those allegations in his oppositions to Defendants' motions to dismiss. In so doing, he eliminated any ambiguity that he could state a claim if given the ability to fully recite his allegations. *Id.*

Both sets of Defendants devote considerable space to arguing that plaintiffs may not amend their complaints through subsequent briefs opposing dismissal and therefore that Montanez's First Amended Complaint remains the operative pleading. Ans. Br. I 14–16; Ans. Br. II 21–23. But they miss the point; Montanez never argued otherwise. *See* Op. Br. 26–28. He argued that the oppositions demonstrated that amendment was far from futile, not that they constituted valid amendments of the operative complaint on their own. *Id.* Since the Government Defendants made no other argument as to the futility of amendment, they have forfeited any. *United States v. Dupree*, 617 F.3d 724, 728 (3d Cir. 2010).

The Medical Defendants add an additional tack, arguing that amendment would be futile because "his additional allegations" are "merely his own suppositions and conclusions about motives and intentions rather than facts, do not bolster any of his claims, but rather demonstrate that the basis of his Amended Complaint is that he disagrees with" Defendants' failure to provide treatment. Ans. Br. II 27.

7

Even a cursory examination of the oppositions demonstrates otherwise. Some examples: Montanez wrote that when Nurse Wagman first took him to his cell and made him drag himself across the filthy floor, she yelled "Oh god! Stop faking it!" App. 90. He alleged that when Nurse Wagman and Dr. Mahli left him alone in his cell, paralyzed and urinating on himself, he had to drag himself around the room and up to the sink to wash his soiled clothing, falling and injuring himself multiple times. App. 50–51. At SCI-Rockville, Montanez told both a nurse and Dr. Preston that he was paralyzed and could not access his toilet—the nurse "threw her hands up in the air" and both staff the nurse and the physician told Montanez that he had to "do the best he could" on his own. App. 54–55. At SCI-Huntington, he requested being placed on medical bedrest or lay-in but staff instead moved him back to general population, where he had to walk "up and down the long tiers," which he still could not do "properly" nor without considerable pain. App. 66–67. At the SCI-Smithfield infirmary, Montanez told Dr. Roberts about "extreme" pain while sleeping and asked to be moved to a hospital bed, and had Dr. Roberts ignore his request, deny him physical therapy, and deny him pain medication stronger than Tylenol. App. 71–74. These allegations, illustrative and not exhaustive of the oppositions' content, are "facts." They are not "suppositions and conclusions about motives and intentions." Nor, as discussed above in Section II, do they so much as suggest good-faith medical disagreement rather than deliberate indifference.

8

The Medical Defendants also argue that "Montanez has already been granted leave to amend." Ans. Br. II 27. This is true but misleading. Operating *pro se*, Montanez moved to amend his complaint but the district court ruled that he had the ability to amend his complaint by right pursuant to Fed. R. Civ. P. 15(a)(1)(B), not at the district court's discretion. Doc. No. 23. This amendment was largely to withdraw one defendant and add another. Doc. No. 22. The amendment was not in response to any order from the district court identifying problems in his complaint, meaning that Montanez never received such an opportunity.

Neither set of Defendants addresses or even mentions a further basis for amendment, which is that Montanez was limited to under four pages of handwritten allegations by the district court's *pro se* form, all to cover multiple claims and a range of different conduct by different defendants in different facilities.[2] The district court itself noted that "the Third Circuit Court of Appeals has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend unless such an amendment would be inequitable or futile." App. 29 (internal

---

[2] The Government Defendants see no issue with such a limitation but their counsel do not constrain themselves to such terse allegations. *See, e.g.* Complaint, *Connecticut et al. v. Sandoz, Inc. et al.*, Docket No. 2:20-cv-03539 (E.D. Pa. Jul 20, 2020) (the Government Defendants filing, along with co-complainants, a 606-page complaint). The district court appears to have realized that less than four handwritten pages is insufficient to state a well pleaded complaint as well. After Montanez's claim was dismissed, court revised its "Pro Se Prisoner Civil Complaint Packet" online so as to not contain a page limit. *See* Pro Se Prisoner Civil Complaint Packet, https://www.pamd.uscourts.gov/sites/pamd/files/Pro%20Se%20Prisoner%20Civil%20Complaint%20Packet%20-%204.1.24_1.pdf (revised Apr. 1, 2024).

quotation marks omitted). After dismissing Montanez's claim on incorrect legal grounds when the court's own form prevented him from fully presenting his allegations, preventing amendment was the inequitable outcome, not permitting it. *See, e.g.*, *Harpo v. U.S. Marshal Serv. Deputy Supervisor*, No. 1:21-cv-4827, 2022 WL 22329121, at *2 (N.D. Ga. Feb. 1, 2022) (rejecting a magistrate's recommendation for dismissal when plaintiff's failure to state an element was "due to a lack of space in [the] pre-printed complaint form," ordering that he be permitted to amend instead) (internal quotation marks omitted).

## CONCLUSION

For the foregoing reasons, the district court decision should be reversed and the case should be remanded.

June 20, 2024

                    Respectfully submitted,

                    /s/ *Samuel Weiss*
                    Samuel Weiss
                    RIGHTS BEHIND BARS
                    416 Florida Avenue NW
                    #26152
                    Washington, DC 20001
                    202-455-4399
                    sam@rightsbehindbars.org

                    *Counsel for Plaintiff-Appellant*

# CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume, typeface, and type-style requirements of Rule 32(a) of the Federal Rules of Appellate Procedure and Rule 32 of the 3rd Circuit Rules. This brief contains 2,552 words, excluding the parts of the document exempted by Fed. R. App. 32(f), as calculated in Version 15.26 of Microsoft Word for Mac 2016. It was prepared in 14-point font using Garamond, a proportionally spaced typeface.

*/s/ Samuel Weiss*
Samuel Weiss

## CERTIFICATE OF SERVICE

I certify that on June 20, 2024, I electronically transmitted the foregoing brief to the Clerk of the Court using the appellate CM/ECF System, causing it to be served on counsel of record, who are all registered CM/ECF users.

*/s/ Samuel Weiss*
Samuel Weiss
