UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

DOCKET NO:  23-2669

JOSE MONTANEZ,

     Plaintiff/Appellant,

vs.

PAULA PRICE, Health Care
Administrator SCI-Huntingdon; et al.,

     Defendants/Appellees.
_____


HEARING BEFORE THE HONORABLE
CHERYL ANN KRAUSE, CIRCUIT JUDGE
STEPHANOS BIBAS, CIRCUIT JUDGE
THOMAS LEE AMBRO, CIRCUIT JUDGE




AUDIO RECORDING

FILE NAME: 23-2669-Jose Montanez v. Paula Price_ et al

DATE TAKEN:  Tuesday, September 24, 2024






Transcribed By:  Aimée Rubinowitz, CET-1068

1  APPEARANCES

2

3          On behalf of PLAINTIFF/APPELLANT:
            RIGHTS BEHIND BARS
4          BY: LILLIAN NOVAK, ESQUIRE
            416 Florida Avenue NW, Unit 26152
5          Washington, D.C. 20001
            lily@rightsbehindbars.org

6

7          On behalf of DEFENDANTS/MEDICAL APPELLEES:
            WEBER GALLAGHER SIMPSON STAPLETON FIRES & NEWBY
8          BY: KEANNA A. SEABROOKS, ESQUIRE
            6 PPG Place, Suite 1130
9          Pittsburgh, PA 15222
            kseabrooks@wglaw.com

10

11         On behalf of DEFENDANTS/COMMONWEALTH APPELLEES:
            OFFICE OF THE ATTORNEY GENERAL OF PENNSYLVANIA
12         BY: JACOB A. FRASCH, ESQUIRE
            Strawberry Square, 15th Floor
13         Harrisburg, PA 17120
            jfrasch@attorneygeneral.gov

14

15

16

17

18

19

20

21

22

23

24

25

1                          INDEX

2

3

4                                                    PAGE

5  Proceedings                                        4

6  Certificate of Transcriptionist                   50

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          JUDGE KRAUSE:  And we will proceed now with Montanez

2    versus Price, 23-2699.  Ms. Novak.

3          MS. NOVAK:  Good morning, Your Honor.  And may it

4    please the court, Lillian Novak for Appellant Jose Montanez.

5    I'd like to reserve four minutes for rebuttal.

6          JUDGE BIBAS:  So he pronounces it Montanez?

7          MS. NOVAK:  Montanez, yes.  Thank you, Your Honor.

8          So Mr. Montanez in this case pleads two separate

9    claims against distinct classes of defendants.  So for his ADA

10   and Rehabilitation Act claims for the failure to accommodate his

11   disability, he correctly and sufficiently proceeds against the

12   State of Pennsylvania.

13         For his Eighth Amendment claims for deliberate

14   indifference to his serious medical needs, he correctly proceeds

15   against individual defendants, and there are six individual

16   defendants.  Two of them, Dr. Mahli and Nurse Wagman, interacted

17   with Mr. Montanez during the period of time when he first became

18   paralyzed.  The remaining four, Drs. Preston and Edwards, P.A.

19   Nalley, and Mr. Ellers, interacted with him after he received

20   surgery and was returned to the prison system.

21         The District Court, in dismissing both of these claims

22   on the merits, make several distinct legal errors, many of which

23   the appellees in this case do not even attempt to defend in

24   their briefs to this court.

25         The edges of this case but up against some unsettled

```
 1  doctrines about liability that this court asked us to address in

 2  their most recent letter to counsel.  And I'm very happy to talk

 3  about all of those.

 4           JUDGE KRAUSE:  Before you do, as to the other

 5  defendants --

 6           MS. NOVAK:  Yes.

 7           JUDGE KRAUSE:  -- like Paula Price, Wakefield,

 8  Rivello, Patton, Davis --

 9           MS. NOVAK:  Yes.

10           JUDGE KRAUSE:  -- do you concede that if your client

11  failed to state a claim as to them?

12           MS. NOVAK:  Yes.  So they're not -- so some of those

13  defendants, he alleges actions that go to the liability of the

14  State's under the ADA, but we do -- we're not pressing any

15  Eighth Amendment claims against those individuals in there.

16           JUDGE AMBRO:  But should he be able to amend if

17  there's anything to add against them?

18           MS. NOVAK:  Yes.  If there's anything to add

19  against -- if he has additional information, the six that I

20  outlined, we believe he has stated a claim in the current

21  complaint.  And that for some of them, if it doesn't quite

22  level -- rise to the level of stating a claim, he certainly

23  alleged enough facts in the opposition, although not properly

24  included in opposition, such that remanded amendment would not

25  be futile.
```

1    So as I was saying, this court put some questions to

2  us, and I'm more than happy to talk about those, but the

3  majority of the questions in this case -- or the -- but this

4  court can resolve this appeal without resolving the majority of

5  those questions, looking just at how liability runs against

6  those defendants that I pointed out at the start.  And this

7  court can reverse on three legal errors and remand for further

8  proceeding and amendment.

9    And those legal errors are, first, looking at the ADA

10 and Rehabilitation Act claims, the District Court held that Mr.

11 Montanez did not state that he lacked meaningful access to any

12 prison programs or services.  In his complaint he alleges that

13 there are many prison programs and services that both during

14 this initial time period of his paralysis and later, when he was

15 going through his slow and halting recovery, he didn't have

16 meaningful access to.

17    In the complaint those include toileting, bedding, the

18 medical department, and mobility.  And all of those, looking at

19 the Supreme Court's decisions in Yeski (phonetic), and Georgia,

20 and this court's decision in Furgess that held that a shower was

21 a program or service within a prison are sufficient allegations.

22    JUDGE KRAUSE:  You have good authority as to those,

23 but when it comes to bedding, to a double mattress, we've got

24 the Seventh Circuit Bryant decisions.

25    MS. NOVAK:  Yes.

1          JUDGE KRAUSE:  And where is the distinction, where

2   would we be drawing the line between what constitutes, you know,

3   a program or service versus medical treatment when it comes to

4   something like a request for a mattress?

5          MS. NOVAK:  Yes, Your Honor.  So this court has

6   adopted Bryant versus Madigan since -- Madigan, my apologies --

7   so far just in an unpublished decision (indiscernible), and this

8   court actually doesn't have to resolve that question to resolve

9   this appeal, because Mr. Montanez's case was dismissed on the

10  pleadings, and all he has to do is allege lack of access to --

11  failure to accommodate for lack of access to one program, and he

12  alleges several.  So even if this court doesn't rule on bedding,

13  they can -- you all can rule on the others.

14         But to address your question, I think it helps to take

15  a step back and look at what the purpose of the ADA is, which is

16  to ensure access for people with disabilities on par with access

17  for people who are not disabled.  And so getting a double

18  mattress could be medical treatment for someone who, you know,

19  perhaps -- and this isn't Mr. Montanez's situation

20  necessarily -- but perhaps who had a condition that having --

21  I'll actually retreat on that a bit.  I was trying to do a

22  counterfactual, but I'm not entirely sure that it holds.

23         I think the question is, can he actually get a good

24  night's sleep?  Can he get a good night's sleep on par with

25  someone else?  And if he can't get that with the mattress, it's

1 an accommodation.  It's not something that's treating his

2 underlying medical condition.  So I think that's the question

3 the court wants to hone in on.  But, again, the Bryant versus

4 Madigan question does not need to be resolved to resolve this

5 appeal.

6        JUDGE BIBAS:  Can we talk about -- I'm curious to

7 know -- is Wellpath a public entity under title ADA?

8        MS. NOVAK:  So we're not pursuing that argument.  I

9 think that that's an unsettled question in this circuit, but the

10 weight of authority is against the idea that it's a public

11 entity.

12        JUDGE BIBAS:  Okay.  Well, are Wellpath doctors

13 engaged in state action under 1983?

14        MS. NOVAK:  Yes.  So I think that the Supreme Court's

15 decision in West answers that question.  So that was a contract

16 doctor, that because he was performing, traditionally,

17 essentially, government -- exclusively governmental function,

18 was found to be acting under color of law.

19        JUDGE BIBAS:  Okay.  If the doctors denied him access

20 to a prison service program or activity, who's liable for that,

21 the Commonwealth, or Wellpath, or the individual doctors?

22        MS. NOVAK:  So the State -- our position is the State,

23 would be liable for that.  So this goes to the fourth question

24 that the court put to us in its letter to the parties.  So the

25 State can't contract away its liability for treating -- for

1  nondiscrimination against disabled people by contracting away

2  its interactions with disabled people.  This is again --

3       JUDGE AMBRO:  What about Wellpath on its own?

4       MS. NOVAK:  Wellpath's liability?  So Wellpath, under

5  the ADA, is not a public entity, wouldn't have its own liability

6  as an entity.  Under Section 504 of the Rehabilitation Act it's

7  a slightly more complicated question.  It would be whether they

8  receive federal funding themselves.

9       Mr. Montanez didn't allege that in this necessarily

10 truncated complaint, but there is public record of Wellpath

11 having federal contracts.  And --

12      JUDGE KRAUSE:  Is it enough to have federal contracts

13 for that to qualify as funding under the Rehabilitation Act?

14      MS. NOVAK:  If they're receiving federal funds, yes.

15 If your question is to at what level, like, whether they're --

16 have a contract somewhere else versus funding for their work at

17 the Pennsylvania Department of Corrections, I think that that is

18 an open and more complicated question.  This court has

19 considered it with respect to if a state agency gets funding,

20 then all parts of the state agency are bound by the

21 Rehabilitation Act, not just the part that the funding gets

22 funneled do.

23      That's a question we'd be more than happy to provide

24 supplemental briefing on and more thinking on.  But it isn't one

25 that needs to be resolved to resolve this appeal because Mr.

1  Montanez is actually hasn't alleged that Wellpath itself

2  receives federal funding.  He alleges that the State did.  And

3  he can proceed against the State on the Rehabilitation Act, and

4  the -- he alleges that the Pennsylvania Department of Correction

5  has, and proceed against them.  But that would be something that

6  he could allege on remanded and amended complaint, and that

7  would come before the District Court.

8          JUDGE BIBAS:  These doctors, not the ones at the

9  prison, but the ones --

10         MS. NOVAK:  Yes.

11         JUDGE BIBAS:  -- working for Wellpath, the private

12 individuals, do they have an official capacity?  It seems a

13 little odd to sue a private doctor in an official capacity.  So

14 should we just view that category as just not fitting this

15 context?

16         MS. NOVAK:  So I think that it -- I think it's --

17 yeah, it's really -- it is confusing.  I agree with you, Your

18 Honor.  And I think that it -- under the ADA, their actions are

19 imputed to their employer, and the State, ultimately, for

20 liability.  For the -- I'm sorry for the Eighth Amendment

21 they're being sued in their individual capacity for damages.  So

22 the question would be their official capacity for injunctive

23 claims.

24         I think that because they're performing this

25 traditionally exclusive governmental function, there's -- it

1 would be strange to hold that there was no way for a plaintiff

2 to get an injunctive remedy against them.  But that's also not

3 something that the court needs to resolve at this stage,

4 because, as defendants point out, Mr. Montanez has been

5 transferred to a different prison, so none of the individual

6 medical providers that he is suing are the ones who are

7 currently providing him care, so he wouldn't have any --

8           JUDGE BIBAS:  I see.

9           MS. NOVAK:  -- injunctive claim against them.

10          JUDGE BIBAS:  So that remedy is moot as to those

11 individual doctors.

12          MS. NOVAK:  Exactly.

13          JUDGE BIBAS:  Though damages remains alive, and

14 injunctive relief against the Commonwealth remains alive.

15          MS. NOVAK:  Exactly.

16          JUDGE AMBRO:  Where is he now, Smithfield?  Or where

17 is he now?

18          MS. NOVAK:  He's at SCI Benner, which is not --

19 Benner, not one of the three prisons --

20          JUDGE AMBRO:  Not one of the ones --

21          MS. NOVAK:  -- that are in the complaint.

22          JUDGE AMBRO:  Okay.

23          MS. NOVAK:  So if I could speak a little bit about the

24 second error under the ADA that the District Court made.  It's

25 about deliberate indifference.  So because Mr. Montanez seeks

 1  damages under the Rehabilitation Act and the ADA, he must show

 2  deliberate indifference.  And this court explained in its

 3  opinion in Dura (phonetic) that the standards for deliberate

 4  indifference under the ADA and under the Eighth Amendment are

 5  distinct, and that the ADA standard is higher.

 6          And the District Court, in its analysis, said, well,

 7  we found no deliberate indifference for the Eighth Amendment, so

 8  there's none for the ADA, but failure to meet a higher standard

 9  cannot mean failure to meet a lower standard.  And Mr. Montanez

10  did, in fact, meet the lower ADA deliberate indifference

11  standard, which is that the State of Pennsylvania, the

12  Pennsylvania Department of Corrections, acted with a knowing

13  disregard towards a substantially likely violation of his

14  federal rights, and those are his disability rights.

15          And so we have that alleged in both the conduct of

16  state employees like Nurse Wagman, who took him to the brink of

17  his cell in a wheelchair and saw he was in this inaccessible

18  cell that made him drag his body across the floor, as well as

19  Mr. Montanez alleges that he filed grievances for all of this

20  conduct and grieved everything up to the top of the grievance

21  process.  So there was knowledge alleged throughout the

22  grievance process of the prison system.

23          I'd like to talk a little bit about the Eighth

24  Amendment liability, as well, and why Mr. Montanez has

25  sufficiently alleged deliberate indifference.  So for Nurse

1  Wagman, this is -- this question's resolved by this court's

2  decision in Pearson.  That was a case in which a nurse made a

3  man who was in excruciating pain crawl across a cell to get to a

4  wheelchair.  And this court held that that conduct was exactly

5  the kind of not medically informed, wanton behavior that the

6  Eighth Amendment is meant to prescribe.

7          And it's important in that case, the court really

8  focuses on that one moment, that one decision that the nurse

9  made to make this plaintiff, who was in excruciating pain, crawl

10  across the floor.  Nurse Wagman did the same thing.  She took

11  Mr. Montanez to the edge of his cell and had him drag his body,

12  not only in excruciating pain, but he was, in fact, paralyzed

13  with a spinal injury that it -- there was a great risk of

14  further harm to himself by making him move in this manner.  And

15  that's sufficient to answer the question for Nurse Wagman.

16          Turning to Dr. Mahli.  So Dr. Mahli came to Mr.

17  Montanez's cell the next day, and he never took him to the

18  medical unit to examine him.  He examined him, or he purports to

19  have examined him, we would argue that he actually didn't

20  conduct a examination, through the bars of his cell.

21          And this is actually the same conduct as one of the

22  defendants in this court's decision in Spruill v. Gillis, where

23  the doctor came to the cell, the plaintiff in that case actually

24  had the same disability, the same underlying serious medical

25  needs, spinal stenosis, as Mr. Montanez.  And the doctor in that

1  case went to the cell and said, you're not going to the medical

2  unit.  I hear you're in a lot of pain.  That plaintiff actually

3  wasn't paralyzed, he was just in a lot of pain.

4            I also see that I've gone into my rebuttal time.

5            JUDGE KRAUSE:  You're on our time.

6            MS. NOVAK:  Okay.

7            JUDGE KRAUSE:  We'll keep track just by adding, let's

8  say, ten minutes.

9            MS. NOVAK:  Okay.  Thank you so much.  So in that case

10 the plaintiff was not, in fact, paralyzed, but was in

11 excruciating pain from the same underlying serious medical need.

12 And the court held that two medical providers, both that doctor

13 and a physician's assistant, were deliberately indifferent

14 because of their failure to provide medical care to that

15 plaintiff when that failure to provide care was likely to lead

16 to undue suffering and to a risk of residual tangible injury.

17            JUDGE KRAUSE:  But what about Dr. Preston, where the

18 denial of medication seems like the only allegation that we

19 have?

20            MS. NOVAK:  Yes.  So I think for Dr. Preston it's

21 important to look at it in the full context.  So of course there

22 would be points where the denial of medication or one medication

23 or another would come nowhere near to rising to the level of

24 deliberate indifference and stating an Eighth Amendment claim,

25 but Dr. Preston's actions happened when Mr. Montanez had had

1  major spinal surgery, just about two weeks earlier, still could

2  not walk, still could not stand by himself, and that denial of

3  care put him in a position, as he alleges in the additional

4  facts included in his opposition, where he fell many, many times

5  trying to move through this excruciating pain about the cell

6  that he was in, trying to access the toilet.  And he actually

7  did fall and suffered another spinal injury, a herniated disc.

8          JUDGE KRAUSE:  And so how do you distinguish that

9  from, say, medical malpractice?

10         MS. NOVAK:  The -- I think that the distinguishing

11  factor is that that denial of care, that providing any level of

12  medical care doesn't immediately defeat deliberate indifference,

13  because the medical care can be at a level where it still

14  creates such an undue risk of suffering, and this risk of -- or

15  creates undue suffering and a risk of further injury.  So I

16  think Spruill is helpful here.

17         Again, the P.A. that the court -- the physician's

18  assistant that the court found to be deliberately indifferent in

19  that case, the action that he took was telling Mr. Spruill, who

20  had the same condition as Mr. Montanez, I'm not gonna give

21  you -- I hear you're in pain, I'm not gonna give you different

22  pain meds.  I'm not gonna change your medication.

23         And it's because of this context, it's because of the

24  undue risk for someone who's in pain with this sort of mobility

25  impairment that adheres.  Again, if this court doesn't find the

 1  allegations against Dr. Preston in the short complaint

 2  sufficient, which they're concededly sparse, there is a lot more

 3  information that Mr. Montanez includes, that he should be able

 4  to amend it.  That would certainly not be futile.

 5       JUDGE AMBRO:  That was actually part of my question.

 6  Is there other information you could put into an amended

 7  complaint?

 8       MS. NOVAK:  Yes.  So there is -- Mr. Montanez also

 9  goes to Dr. Preston and says that he had asked a nurse at the

10  facility.  -- this goes -- some of this goes also to his

11  disability claims, but on the Eighth Amendment claim I think it

12  suffices to help with this undue suffering element of the

13  deliberate indifference test.

14       So when he was first transferred to the first prison

15  he was at, after he was in the hospital and rehabilitation

16  center, he pressed a button, he alleges all of this in the

17  amendment, asking a nurse to help him get to the toilet, and she

18  said, I'm not going to help you.  That's only for emergencies.

19  You just have to do the best yourself.

20       And he brought that to Dr. Preston as well and said, I

21  keep falling trying to use the toilet in my cell because I have

22  to boost myself into my wheelchair.  And Dr. Preston also says,

23  you're just gonna have to try to do the best on your own, with

24  no attempt to insulate him from further harm.  And that could

25  have been something that perhaps additional medical treatment

1  could have made it less painful for him to go through all those

2  motions.

3          JUDGE KRAUSE:  What about as to Wellpath itself?

4          MS. NOVAK:  To Wellpath's liability as an entity?

5          JUDGE KRAUSE:  Yes.

6          MS. NOVAK:  I'm sorry, Your Honor.  Thank you.  So I

7  think that -- so we're not pressing any claims against Wellpath

8  as an entity for the Eighth Amendment.  And for the

9  Rehabilitation and ADA claims, I don't think there's one stated

10 in the complaint as is.  As I said, Mr. Montanez could try to

11 amend in -- on remand a 504 claim with evidence of Wellpath's

12 federal funding.

13         JUDGE KRAUSE:  The District Court understood there to

14 be a claim and concluded that while there might otherwise be

15 with a policy or custom.

16         MS. NOVAK:  Yes, yes, absolutely.  And those

17 allegations are not in the necessarily truncated complaint, but

18 again, if Mr. Montanez has allegations of that, he should be

19 able to amend them.

20         JUDGE KRAUSE:  And there seems to be nothing about

21 that even the opposition papers that would suggest a policy or

22 custom.

23         MS. NOVAK:  Yes, Your Honor.  I think that's true.

24 And I think that, you know, we're seeking from this court both

25 remand on these three specific legal issues -- or I'm sorry --

 1  reversal on these three specific legal issues.  So that's the

 2  lack of program or service being named, and deliberate

 3  indifference in both the disability context and the Eighth

 4  Amendment context.

 5          But the district judge wrote a 27-page opinion, and we

 6  actually only take umbrage with about eight pages of it.  And so

 7  the findings as -- or sorry -- the holdings as to Wellpath we

 8  think we're correct on the complaint.  And if Mr. Montanez is

 9  given a chance to amend it, he has that information, he

10  shouldn't be precluded from including that in an amended

11  complaint.  It's not in the record.

12          So the District Court wouldn't have been completely

13  out of order to find that that would be futile.  I'm sorry, I

14  shouldn't have said out of order, but it wouldn't have been

15  completely wrong to find that that would have been futile.

16          But with respect to a lot of the allegations against

17  the individual defendants, certainly it wouldn't have been

18  futile.

19          JUDGE AMBRO:  Against whom do you believe you have

20  your strongest claims?

21          MS. NOVAK:  In the Eighth Amendment context, the

22  strongest claims, as alleged in the complaint, are against Nurse

23  Wagman and Dr. Mahli.  And I'd point out that also in the

24  District Court's opinion, and this is --

25          JUDGE AMBRO:  And where does Mr. Ellers fit in this

1  for not divulging information?

2  　　　MS. NOVAK:  Yes so Mr. Ellers, Mr. Montanez alleges

3  that he lied about the results of an X-ray, and this was taken

4  after he fell.  And so I think that there's a question there.

5  And this is, again, one of these defendants that, admittedly,

6  there's little in the actual complaint, other than this

7  allegation of him lying.

8  　　　But as a non-medical provider -- of course, medical

9  providers, if they're aware of -- or non-medical providers, if

10  they're aware of care by medical providers, aren't normally

11  individually liable under the Eighth Amendment, but if he

12  interfered in that care, if he had knowledge that Mr. Montanez,

13  in fact, did have a herniated disc, and instead told him that

14  he -- his results were normal, and precluded further care, then

15  that would state any (indiscernible) claim.  So that's also

16  something that the District Court could consider on amendment.

17  　　　MS. NOVAK:  I have gone on well over my time, so I'm

18  happy to return on rebuttal, unless there's any other questions

19  that the court has.

20  　　　JUDGE KRAUSE:  Is it your intention to -- will you be

21  representing Mr. Montanez on remand?

22  　　　MS. NOVAK:  So we've been retained just for the

23  limited scope of the appeal.  That's a conversation our office

24  would have to have.  But if we're not able to do it, we'll

25  certainly do what we can to try to find him pro bono

 1  representation.

 2        MS. SEABROOKS:  Good morning, Your Honors.

 3        JUDGE KRAUSE:  Good morning.

 4        MS. SEABROOKS:  Or I don't know, maybe afternoon.  My

 5  name is Attorney Seabrooks, and I'm here on behalf of the

 6  medical appellees, Wellpath, Dr. Preston, Dr.  Mahli, Dr.

 7  Edwards, and P.A. Nalley.

 8        Okay.  My understanding, based on plaintiff's -- well,

 9  excuse me -- appellant's oral argument here today is that they

10  are just raising the appeal as to the grant of dismissal of the

11  Eighth Amendment claims in favor of medical appellees.  And so

12  unless the court has questions regarding the ADA --

13        JUDGE AMBRO:  The question on the Eighth Amendment is,

14  can you tell us why leaving someone paralyzed, incontinent, in

15  extreme pain for three days is within professional standards of

16  medical care?

17        MS. SEABROOKS:  I believe that, based on the

18  allegations set forth in Mr. Montanez's complaint, was that the

19  initial nurse who saw him believed that he was faking his

20  condition and --

21        JUDGE AMBRO:  Turns out he wasn't faking, and it turns

22  out he had stenosis, and edema, and he had surgery.  So somebody

23  thought, whoa, we better move quickly.

24        MS. SEABROOKS:  It is correct that it was ultimately

25  determined that he did have a medical diagnoses.  However, when

1  he was seen by Dr. Mahli, the day after he had seen the initial

2  nurse, his allegations just simply state that he reported that

3  he was unable to walk.  I know that in the complaint he alleges

4  that he was -- he crawled across the desk, and -- but then in

5  his brief in opposition to the motion to dismiss, he states that

6  he simply informed the doctor that he was unable to walk.

7          JUDGE BIBAS:  Ms. Seabrooks, does Wellpath get federal

8  funding?

9          MS. SEABROOKS:  No.

10          JUDGE BIBAS:  Okay.  And your friend on the other side

11  said that Montanez's position is Wellpath doctors are engaged in

12  state action under Section 1983.  What's your position on that

13  and why?

14          MS. SEABROOKS:  I would agree that Wellpath's doctors

15  are engaged in state action, simply because Wellpath is

16  contracted to provide medical services within the DOC.

17          JUDGE BIBAS:  Okay.

18          MS. SEABROOKS:  And therefore, their providers

19  providing those services are working to provide a -- to provide

20  the medical services which the state is required to provide.

21          JUDGE KRAUSE:  Okay.  So I want to clarify your

22  answer.  When you say, Wellpath doesn't receive federal funds,

23  you're saying that they don't have any federal loans, no federal

24  grants --

25          MS. SEABROOKS:  My client --

 1            JUDGE KRAUSE:  -- no federal contracts?

 2            MS. SEABROOKS:  As far as I'm aware, based on

 3  information provided by my clients, they do not receive federal

 4  funding.

 5            JUDGE KRAUSE:  So even looking to materials that we

 6  could take judicial notice of, like government websites, would

 7  suggest otherwise.

 8            MS. SEABROOKS:  I do not know, Your Honor.  And I

 9  would -- I would have to look into that.  But as far as I know,

10  as of today, my client has informed us that they do not receive

11  federal funds.

12            JUDGE BIBAS:  Did you do any research after you got

13  the court's letter asking about this?

14            MS. SEABROOKS:  I did not do research on that specific

15  issue because the question had come up sometime ago within the

16  past two or three years, and I was informed by my client that

17  they did not receive federal funds.

18            JUDGE KRAUSE:  Are you relying on something that they

19  told you years ago?  Or are you --

20            MS. SEABROOKS:  I'm relying --

21            JUDGE KRAUSE:  -- you're making a current

22  representation based on the information that's currently

23  available to you?

24            MS. SEABROOKS:  I am relying on something that I was

25  told years ago, but then speaking with --

 1         JUDGE BIBAS:  You did not do any further inquiry in

 2  response to this court's letter asking to?

 3         MS. SEABROOKS:  I did not inquire of my client as to

 4  whether or not they receive federal funds, but in discussing

 5  this matter with my -- with the supervising attorney, he also

 6  advised that Wellpath does not directly receive federal funds at

 7  all.  And we are unaware of Wellpath receiving any indirect

 8  federal funds.

 9         JUDGE AMBRO:  Maybe if you could just check again, and

10  then submit a letter to update --

11         JUDGE BIBAS:  Grants, loans, contracts.

12         JUDGE AMBRO:  Right.

13         MS. SEABROOKS:  I will do that.

14         JUDGE AMBRO:  Okay.

15         MS. SEABROOKS:  Returning to the initial question,

16  based on Mr. Montanez's allegations, it appears that he may have

17  been left paralyzed, so to say, in his cell for three days.

18  However, there are no additional allegations which suggest that.

19  He hasn't set anything forth in his complaint or even brief in

20  opposition.  Even though we don't look to the facts or the

21  allegations set forth in the brief, he doesn't set forth any

22  additional allegations which would support that -- his claim in

23  this regard.

24         JUDGE KRAUSE:  He does allege in the complaint that

25  Dr. Mahli left him alone in the cell for three days, knowing

1 that he was paralyzed, and that he was uncontrollably urinating

2 on himself.

3          MS. SEABROOKS:  Well --

4          JUDGE KRAUSE:  How is that not deliberate

5 indifference?

6          MS. SEABROOKS:  Providers within the prison see

7 inmates based on their requests for treatment.  And so if Mr.

8 Montanez was experiencing these symptoms or paralysis,

9 incontinence, essentially, then we would expect that he would

10 place a sick call to be seen.  And if something had happened

11 where it was observed that he actually was experiencing these

12 things, then that would prompt additional treatment.

13          Based on his allegations alone --

14          JUDGE KRAUSE:  But the case law is not just when

15 there's a specific request, it's also when there's a need that

16 is open and obvious, right?

17          MS. SEABROOKS:  That is true, Your Honor.  But in --

18 well, not but -- I do agree with that statement.  And noting

19 that he alleges that Dr. Mahli examined him, it's -- I would --

20 I would presume that Dr. Mahli observed that he was not

21 paralyzed, and not urinating on himself --

22          JUDGE KRAUSE:  We can't make --

23          MS. SEABROOKS:  -- or he didn't see--

24          JUDGE KRAUSE:  -- assumptions --

25          MS. SEABROOKS:  -- evidence of that.

1          JUDGE KRAUSE:  -- we have to take what's in the

2     complaint, and the complaint alleges that he knew these two

3     conditions.

4          MS. SEABROOKS:  Well, the complaint alleges that he

5     told Dr. Mahli this, not that Dr. Mahli actually observed him

6     crawling across the desk, or observed him either urinating on

7     himself or seeing that he used the bathroom in cell, or -- yeah.

8     The complaint doesn't set forth additional allegations to

9     support these allegations.  It just says that, hey, I told this

10    doctor this, and because I told him this, he should have

11    believed me and done something more.

12         Upon examination, it appears that nothing further

13    was -- that nothing was determined which would prompt Dr. Mahli

14    to send Mr. Montanez to the hospital, or provide additional

15    treatment.

16         JUDGE KRAUSE:  What is the examination that you're

17    referring to?  It's --

18         MS. SEABROOKS:  Well, in his complaint he alleges that

19    Dr. Mahli examined him through a cell door.  And I understand

20    that he took issue with the fact that Dr. Mahli did not enter

21    the cell, which, based on how treatment is provided within the

22    prison, examinations are typically done through the cell door

23    unless the inmate is brought to the medical department.  That --

24         JUDGE KRAUSE:  But if an inmate is dragging himself

25    across the floor and reporting to the doctor that he's paralyzed

 1  and urinating uncontrollably on himself, I come back to, how is

 2  that not deliberate indifference, to leave that inmate in the

 3  cell for three days?

 4          MS. SEABROOKS:  I think when looking at the fact that

 5  Mr. Montanez was thought to be faking it the day prior, that

 6  lends to the assumption that he may have had a reputation of

 7  faking it.  And then upon examination, Dr. Mahli -- there's no

 8  allegations which state that Dr. Mahli specifically observed him

 9  crawling or dragging himself across the floor.  There are no

10  allegations that Dr. Mahli observed urination in his cell.

11          And so I don't -- I understand what the court is

12  saying, but I could also see Dr. Mahli's judgment in this, in

13  this circumstance, where he's waiting to see if what Mr.

14  Montanez is reporting is actually true.

15          JUDGE AMBRO:  Isn't that something a jury really needs

16  to decide?

17          MS. SEABROOKS:  I'm sorry, Your Honor?

18          JUDGE AMBRO:  Isn't that something a jury really needs

19  to decide?

20          MS. SEABROOKS:  Based on -- I would agree that that

21  particular allegation may support a claim for deliberate

22  difference.  And so if Mr. Montanez were to amend his complaint

23  in this regard and set forth additional facts, then positively,

24  this is something that we would want to consider, and look at

25  the evidence, to see if there's actually grounds for a jury

1  to --

2          JUDGE KRAUSE:  We know he can do that because we've

3  got in the record that opposition after the motion to dismiss,

4  right?  While that doesn't function as an amendment, it -- is

5  there any reason we can't consider that as sort of proffer of

6  what a basis might be to amend?

7          MS. SEABROOKS:  The court can consider anything that

8  it wishes.  I think that in this case, and we've made the

9  argument that in our brief, that an amendment here would be

10  futile, because he's already amended twice and none of his

11  allegations actually support claims of deliberate indifference.

12          And just with respect to the Eighth Amendment claim,

13  if he were to amend, I think that he would need more facts or

14  more allegations to actually support an Eighth Amendment

15  deliberate indifference claim against Dr. Mahli specifically.

16          JUDGE KRAUSE:  More than nurses and doctors refusing

17  to help him get to the toilet?  More than having to pull himself

18  up on the dirty toilet to excess the sink?

19          JUDGE BIBAS:  More than the doctors watching him as he

20  crawls across the floor soaked in urine?

21          MS. SEABROOKS:  I did not read in his complaint -- I

22  don't believe that with -- that it's alleged in his complaint

23  that any of our providers observed him crawling across the floor

24  or dragging himself to use the restroom.  And so it would --

25          JUDGE KRAUSE:  We can look to the opposition to the

 1  motion to dismiss --

 2          MS. SEABROOKS:  Well --

 3          JUDGE KRAUSE:  -- as a -- facts that could be alleged

 4  if there were an amendment.  So how, in light of what's there,

 5  can you say that amendment would be futile?

 6          MS. SEABROOKS:  Well, I agreed that amendment may be

 7  helpful with respect to his Eighth Amendment claim as to Dr.

 8  Mahli.  I do not believe that, based on his allegations, he set

 9  forth claims as to any of the other medical providers.  And with

10  respect to his actual complaint, the allegations in his original

11  amended and -- original and amended complaints, and even the

12  allegations in his brief in support, I don't believe that he has

13  set forth -- well, I don't -- excuse me.  He has not alleged

14  that our providers observed him engaging in these acts which

15  would have prompted additional --

16          JUDGE KRAUSE:  He had three-and-a-half pages on a form

17  that was provided to him for pro se litigants.  So it's not

18  surprising, is it, that there's limited allegations in the span

19  of three-and-a-half-pages?

20          MS. SEABROOKS:  Well his actual amended complaint --

21  I don't know the exact pagination, but I know that it was well

22  over 20 pages.  And within that amended complaint his specific

23  allegations -- and I believe that's on page -- it may be --

24  it -- I can pull my -- if you don't mind, I can grab my brief.

25          But the first page after the three pages, towards the

 1  bottom, it specifically states that he saw Dr. Mahli the next

 2  day, and that Dr. Mahli came to his cell door, he examined him

 3  through the cell door, and he -- and he told him he was not able

 4  to walk, and he crawled across the desk.  And then he also

 5  states that Dr. -- he informed Dr. Mahli that he was urinating

 6  himself, and Dr. Mahli nodded and walked off.

 7          In his brief in opposition he specifically just states

 8  that Dr. Mahli came to his cell door, and he simply told him

 9  that he was unable to walk.  And then at some point, Dr. -- he

10  told Dr. Mahli that he was also urinating on himself, and that

11  Dr. Mahli walked off.

12          There are no allegations that I'm aware of that any of

13  our providers actually observed him crawling across the floor,

14  or actually using the bathroom on himself, or that anyone in

15  particular reported these things, with the exception of maybe

16  the first nurse.  And based on his complaint, we don't know

17  exactly what was reported to Dr. Mahli.

18          JUDGE KRAUSE:  Well, the amended complaint in the

19  section on request for relief describes, "Seeing Dr. Mahli

20  through the cell bars, as he didn't come into the cell to

21  examine me.  I couldn't walk, so I dragged myself across the

22  cell desk.  I made Dr. Mahli aware that I was urinating on

23  myself, to which he nodded and walked off.  He did nothing to

24  help me from urinating on myself.  This continued for a total of

25  three days."

1        MS. SEABROOKS:  Yes.  And then when you review his

2   brief in opposition, I believe that that may be on page 47, he

3   specifically states he told Dr. Mahli that he was -- that he was

4   unable to -- unable to walk, and he also reported that he was

5   urinating on himself.  There -- with the exception of that one

6   allegation, there's no allegations which state that any of our

7   providers, and especially Dr. Preston, P.A. Nalley, Dr. Edwards,

8   actually observed him urinating on himself or crawling across

9   the floor.  And that's likely due to the fact that their

10  treatment was limited until -- limited to after his surgery.

11       But with respect to Dr. Mahli, his complaint is

12  completely void of allegations that -- which suggest that Dr.

13  Mahli was aware that -- well, learned that these -- learned that

14  this was true.  We don't -- essentially, we don't know how they

15  got to the point of seeing him on August 28th and sending him to

16  the doctors on August 31st.  And that's why I conceded earlier

17  that it's possible that he may be able to reallege an Eighth

18  Amendment claim as to Dr. Mahli, but I don't believe that he has

19  one as to the other medical appellees.

20       JUDGE KRAUSE:  Ms. Seabrooks, we will put out an order

21  as well, but I encourage you to gather the information that you

22  can as to your clients, whether your client receives federal

23  funding in any regard, and to return that information to us in

24  your capacity as an officer of the court.

25       MS. SEABROOKS:  Yes, Your Honor.  Do you have any

1  additional questions or -- thank you.

2       JUDGE KRAUSE:  Thank you.

3       MR. FRASCH:  May I please the court, Jacob Frasch

4  representing the Commonwealth defendants, and I'm asking the

5  court to affirm the District Court's dismissal of all claims

6  with prejudice.  I'll start with the Eighth Amendment claims,

7  which I believe are now only operative against my clients Wagman

8  and Ellers.

9       JUDGE KRAUSE:  If we could just start with prejudice,

10 because as to leave to amend, that's not something that you've

11 engaged in your brief.  Do you concede that -- or I gather or

12 not if you're arguing that it should be dismissed with

13 prejudice.  How would amendment be futile as to the various

14 claims, the 1983 claims, the ADA and RA claims, given what's in

15 the opposition to the motion to dismiss?

16      JUDGE AMBRO:  There are 47 additional pages that --

17      MR. FRASCH:  Well, yeah.  I'll -- I can go claim by

18 claim, and I'll start with the claims against Nurse Wagman, and

19 why I think that dismissal with prejudice was appropriate,

20 actually, in light of the brief in opposition that he filed

21 below.

22      You brought -- you brought us -- to our attention the

23 case Pearson, which obviously involves allegations that are very

24 parallel, very similar to the allegations here; however, Pearson

25 establishes, on page 536, two distinct subprongs of a deliberate

 1  indifference medical treatment claim.  The first is adequacy of

 2  the medical care, which I'm not going to stand up here and say

 3  that Nurse Mel acted appropriately in that regard, but the

 4  second is the individual defendant's state of mind, which is a

 5  subjective inquiry.

 6          And if we look to defendant's brief -- sorry --

 7  plaintiff's brief below, you will see that he concedes that

 8  Nurse Melanie thought he was faking it.  That is a concession

 9  that came from plaintiff.  It's not my concession.  That,

10  respectfully, shows exactly why amendment of that claim against

11  Nurse Mel is futile.  And you compare those --

12          JUDGE AMBRO:  But that sounds like an issue the jury

13  ought to decide, is he faking it or is he not faking it.

14          MR. FRASCH:  Well, the question is --

15          JUDGE AMBRO:  Is did she --

16          MR. FRASCH:  -- does she believe.

17          JUDGE AMBRO:  -- subjectively think he was faking it.

18          MR. FRASCH:  And the question is, has he plausibly

19  alleged that she believes that there's a serious medical need

20  that she's not treating?  And that's his obligation, not mine.

21          JUDGE KRAUSE:  I think the point that she does an

22  examination, and then he's requesting to go to the hospital, she

23  refuses to do that, and allegedly laughs at the notion, and

24  instead returns him to cell --

25          MR. FRASCH:  Again, the laughing was not kind, I'm not

 1  going to defend that.  But Pearson also establishes that nurses

 2  like Nurse Mel or Nurse Wagman can rely on the medical decisions

 3  made by their supervising doctors.  And that's precisely what

 4  she did here.  She took him to the cell, examined him, took his

 5  vitals, called up Dr. Mahli.  Mahli said back in the cell.

 6       Now there's no allegation here that she lied, you

 7  know, to Dr. Mahli or misrepresented his condition.  She did

 8  precisely what I would assume this court would expect her to do,

 9  make a medical decision, escalate that medical decision to the

10  doctor in charge --

11       JUDGE AMBRO:  Medical decision to have him crawl

12  across the floor?

13       MR. FRASCH:  So that I'm -- that I'm not defending as

14  a medical decision.  That I'm defending on the grounds that he

15  has pled himself out of court, basically, with his allegation

16  that she thought he was faking it.  Again, if --

17       JUDGE KRAUSE:  Sorry.  This allegation?  This is --

18  and you've made the argument that what's in the opposition

19  shouldn't be viewed as an amendment to the complaint.  So we're

20  not -- we're not looking at that for amendment purposes, right?

21       MR. FRASCH:  So I understand the cross-contamination

22  issue here, if you will.  If you go back to the amended -- if

23  you go back to the amended complaint, the operative complaint,

24  this dragging across the floor allegation does not appear.  Drag

25  my body across the cell, I don't know what that means, right?

 1  The drag the body across the floor allegation appears in the

 2  briefs in opposition.  So if we're gonna look at those briefs to

 3  determine whether amendments should be futile, you can't look at

 4  only that and ignore the next line that says Nurse Mel thought

 5  he was faking it.

 6          And these allegations, by the way, are in stark

 7  contrast to Pearson, where the inmate was screaming in pain for

 8  hours, the inmate had been seen by two other nurses, the inmate

 9  was about to be seen by a doctor the next day.  A guard had gone

10  to the nurse and said, we got this inmate -- I believe he went

11  to Nurse Rhodes twice in Pearson and said, you gotta examine

12  this inmate, he's in a really bad state.

13          And the court even says in Pearson, quote, "Nurse

14  Rhodes knew that he could not walk."  And again, respectfully,

15  it is our position that Mr. Montanez, the plaintiff here, pled

16  himself out of court with this allegation about faking it.

17          JUDGE AMBRO:  He's pro se --

18          MR. FRASCH:  I'll move on to the claim --

19          JUDGE AMBRO:  -- this was a pro se complaint, right?

20          MR. FRASCH:  It was a pro se complaint.

21          JUDGE AMBRO:  And he's alleged a number of things that

22  are concerning.  And you're saying he has pled himself out of

23  court with respect -- let's say just Nurse Wagman and Dr.

24  Mahli -- those look like, based on the complaint so far, that

25  these are well beyond anything reasonable in terms of medical

 1  care standards, correct?

 2          MR. FRASCH:  I would agree that we cannot defend her

 3  decision on the basis of making a medical decision.  That --

 4  Pearson completely eliminates our ability to do that.  The

 5  question is -- as Pearson established, there's two prongs.

 6  There's the objective prong, whether the care met the standard,

 7  and there's the subjective prong, whether -- did the defendant

 8  actually think that the care was necessary, did the defendant

 9  actually believe?  -- and this knowledge prong is not new to

10  Pearson.  It's raised in Young as well.

11          JUDGE BIBAS:  At most that gets you the first time

12  when they thought, like, oh, he's faking it.  But then when he

13  persists in urinating on himself, and it's three days, et

14  cetera, we don't have to carry that faking it forward to

15  everything.

16          MR. FRASCH:  Agreed.  However, once -- there's no

17  further allegations against Nurse Mel, the allegations are she

18  took him to the cell, basically dumped him in the cell, as the

19  allegations stand --

20          JUDGE BIBAS:  You mean Nurse -- what -- or Dr. Mahli?

21  Which nurse are you talking about?

22          MR. FRASCH:  Sorry.  The defendant --

23          JUDGE AMBRO:  Nurse Wagman.

24          MR. FRASCH:  -- Nurse Wagman sometimes is referred to

25  as Nurse Mel in the pleading, sometimes as Nurse Wagman.

1          JUDGE BIBAS:  Okay.  All right.  Sorry.

2          MR. FRASCH:  Yeah.  I don't -- I don't represent Dr.

3     Mahli.

4          JUDGE BIBAS:  Right.

5          MR. FRASCH:  So I'm only focused on Nurse Mel or Nurse

6     Wagman, not anybody --

7          JUDGE BIBAS:  Mel is Wagman, got it.

8          MR. FRASCH:  Yes.  So again, you are probably right

9     that if there were further allegations, she had come back the

10    next day and he's lying in his -- a pool of his own urine, and

11    she still says, oh, you're faking, do we -- do we pass the

12    plausibility line?  Probably at that point.

13         JUDGE BIBAS:  Okay.  Well, we have a bunch of

14    defendants here.  We have a bunch of things.  We have this one

15    statement in the opposition.  How do we know that this -- none

16    of this could be amended?

17         It may be ultimately that the district judge decides,

18    okay, as to this person with this first interaction that, but if

19    the District Court is getting so many of these things wrong,

20    doesn't it suggest we just send the whole thing back, let them

21    try to amend, and then let the District Court sort it out?

22         MR. FRASCH:  Well, it sounds like the approach you're

23    taking is, there were a lot of things missed the first time, so

24    just do a total redo the second time.

25         JUDGE BIBAS:  It does seem like it.  You can't defend

1 a number of these decisions.  Your friend on your side can't

2 defend a number of these decisions.

3          MR. FRASCH:  Well, I can't defend Nurse Melanie's

4 decision to make him crawl, but I can defend the decision that

5 found she was not liable under the Eighth Amendment.

6          JUDGE BIBAS:  As to the first interaction, right.  And

7 then there are a whole bunch of other actors who have

8 interactions with him after that point.

9          MR. FRASCH:  Right.

10          JUDGE BIBAS:  Okay?

11          MR. FRASCH:  Well, and again, 1983 is individual

12 liability.

13          JUDGE BIBAS:  And so you --

14          MR. FRASCH:  So we do this all the time in prisoner

15 litigation, right?  We go, okay, defendant number 1 out of 27.

16          JUDGE BIBAS:  Right.

17          MR. FRASCH:  And I -- that's what I would ask the

18 court to do here.  I know the case is complicated, and it's

19 complicated facts, and I would ask that the court go defendant

20 by defendant through the facts.  We --

21          JUDGE KRAUSE:  But can I just ask what you're

22 referring to in this plead -- this alleged pleading out of the

23 case?  Is it the statement that defendant Wagman said during

24 this time, "Oh, God, stopped faking it"?

25          MR. FRASCH:  Yes that's, I think, on page 90.

 1          JUDGE KRAUSE:  So his allegation that she said that

 2  aloud is what precludes him from amending his complaint --

 3          MR. FRASCH:  Well --

 4          JUDGE KRAUSE:  -- showed deliberate indifference in

 5  this, the actions she took, and why not also as to that

 6  statement?

 7          JUDGE BIBAS:  You can't challenge someone who says,

 8  "Oh, God, stop faking it"?

 9          MR. FRASCH:  Well, it's his burden to prove -- to

10  plead, plausibly allege the existence of the second prong, which

11  is the knowledge.  He's had --

12          JUDGE BIBAS:  No reasonable jury could find that that

13  wasn't evidence of deliberate indifference.

14          MR. FRASCH:  It was likely deliberate indifference,

15  perhaps, to his dignity, shall we say.  But the claim is

16  deliberate indifference to his medical needs.

17          JUDGE KRAUSE:  Mr. Montanez has no -- has no insight

18  subjectively into what she actually believes.  And there's no

19  assertion as to what she actually believes.  There's an

20  assertion as to what she said, which may contrast with what

21  she -- a jury would find that she actually believed, right?

22          MR. FRASCH:  I agree.  It is still his burden to

23  plausibly allege it in the first place.  And the case Young that

24  you cited specifically says that these prison defendants,

25  officials, are not required to just believe anything that the

1  inmate says.  Has -- it says they have to do some sort of

2  investigation.

3        JUDGE KRAUSE:  This is a pro se complaint.  We read it

4  liberally.  And you draw inferences in the face of a motion to

5  dismiss, you know, in the favor of the non-movement where we

6  have here specific allegations that a -- could reasonably be

7  viewed as providing information to Nurse Wagman, providing a

8  basis for her to actually understand that he was paralyzed and

9  couldn't move, and that's alleged to be her response to it.

10 Couldn't a --

11       MR. FRASCH:  Respectfully --

12       JUDGE KRAUSE:  -- reasonable --

13       MR. FRASCH:  -- the only --

14       JUDGE KRAUSE:  -- reasonable jury conclude --

15       MR. FRASCH:  -- actual allegation --

16       JUDGE KRAUSE:  -- that that demonstrates deliberate

17 indifference?

18       MR. FRASCH:  Respectfully, the only factual allegation

19 that he includes anywhere is that he said he couldn't walk,

20 right?

21       JUDGE KRAUSE:  No.  He says that she left him in the

22 cell to -- and he had to crawl across the floor.

23       MR. FRASCH:  Well, he tells her he cannot walk, and

24 then he crawls across the floor.  So the question then becomes,

25 does every inmate who says to a corrections officer or a nurse,

1  I can't walk, and does something, you know, does something to

2  suggest that they cannot walk, and the inmate -- sorry -- the

3  corrections officer, the nurse, has no other reason to believe

4  them, does that state a claim?  Again the --

5          JUDGE BIBAS:  The corrections officer doesn't come

6  back with, you know, I saw you walking 15 minutes ago.  She

7  comes back with this -- what could be read as angry, or

8  exasperated, or something else.  "Oh, God, stop faking it."  You

9  know, that's an allegation that makes a difference.

10          MR. FRASCH:  Again, I would argue that it makes a

11  difference in our favor.  Again, to contrast the allegations in

12  Pearson, he's not screaming in pain.  He hasn't been seen by two

13  other nurses.  There's no guard calling him, saying, hey, this

14  guy is getting worse, you better see him.  This knowledge

15  element is not unique to Pearson.  It has been raised, again, in

16  other cases, in the Young case, in the Beers-Capitol case that

17  we cite.

18          JUDGE KRAUSE:  We're talking here about a motion to

19  dismiss.  I mean --

20          JUDGE AMBRO:  This is -- you take the allegations as

21  they -- as they are made.

22          MR. FRASCH:  That's correct.  He still has to

23  plausibly allege the second prong of the deliberate

24  indifference.

25          JUDGE BIBAS:  And he's pro se.  So in other words,

1  you're saying is, just whatever the rigid standard is for the

2  best counsel applies to this person pro se, and you wouldn't

3  even give him a chance to amend.

4           MR. FRASCH:  Well, I would -- I would argue that would

5  not be correct, except for two facts.  First, he has essentially

6  already had three opportunities to state his claim, the original

7  complaint, amended complaint, and these briefs below.  Second,

8  the allegations that he has chosen to include in his briefs

9  below, this idea that she thought he was faking it, in our -- in

10 our position, pleads him right out of court.  It just -- it is

11 our position that it doesn't create the plausible --

12          JUDGE AMBRO:  You're meeting a lot of opposition on

13 that.

14          MR. FRASCH:  I understand that, Your Honor.

15          I will briefly address the ADA claims if I can.  I

16 know I'm out of time, but I know the court is interested in

17 that.  So first, this new theory of ADA liability, about the

18 denial of access to sinks, to toilets, to meals, this was not

19 raised below, and I don't even think plaintiff will argue that

20 it was raised below.

21          The theory of the ADA liability below was very clearly

22 and very explicitly, I did not get good medical care.  So it is

23 our position that -- and we would argue that he cannot raise

24 these new claims now.

25          We would also argue that the court should not consider

1  these new claim -- the possible existence of these new claims

2  when determining whether the District Court abused its

3  discretion, because the District Court's not required to look

4  through the pro se inmate's, plaintiff's, papers as like an

5  issue spotter exam, right?  Like, what possible ADA claims could

6  exist here?  They're just not required to do that.

7          And so if the court decides to vacate and remand, I

8  would ask the court not to simply say plaintiff has stated an

9  ADA claim under this new theory, but instead to say plaintiff

10 should be permitted to state this new theory.  And that's for a

11 few reasons.  There's a few defenses that are available, we

12 believe against these new theories that we did not have the

13 opportunity to raise below.

14         Was Mr. Montanez actually disabled at the time of this

15 initial incident, right?  We know that the definition of

16 disabled under the ADA and the regulations is not uncomplicated,

17 shall we say.  It does not always include individuals who are

18 suffering from a temporary illness.  And, you know, we would

19 want to be able to raise that defense below.

20         We would also want to raise the defense below of, was

21 anyone in a position, any of my clients at least, in a position

22 to know that the ADA was substantially likely to be violated on

23 this new theory?

24         JUDGE KRAUSE:  The issue before us is just whether he

25 stated a claim, right?  It's just whether he stated a claim.

 1  And you -- if he has, then it moves forward, you can address

 2  other defenses that you may see fit, but we're -- the question

 3  before us is simply whether there's enough here to plausibly

 4  allege violations of the ADA and Rehabilitation Act and Eighth

 5  Amendment --

 6          MR. FRASCH:  I --

 7          JUDGE KRAUSE:  -- right?

 8          MR. FRASCH:  -- I almost agree with that.  I think

 9  there's a secondary question which -- there's has he plausibly

10  alleged an ADA claim in his original complaint -- I mean -- his

11  amended complaint, the operative pleading.  And the secondary

12  question is should he, based on the additional allegations in

13  the briefs, be permitted to file another amended complaint

14  below, and be given the opportunity to state an ADA claim?

15          And that's the position -- if this court is going to

16  remand, our position would be it should take that second

17  question and answer it that way.  He should be permitted to

18  state -- to attempt to state an ADA claim below.  And the court

19  should not hold that these allegations in the brief do state a

20  claim, because they're not -- they're not in an operative

21  pleading.

22          I would also like to briefly touch on the derivative

23  liability.  Same thing.  This was not raised in the briefs here.

24  It was very -- it was touched upon in Mr. Montanez's -- I

25  believe it is in the brief in opposition.  It is only in the

 1  brief in opposition to the medical defendants.  Therefore,

 2  again, if this court is going to vacate and remand or reverse

 3  and remand, we would argue that the court not touch on this on

 4  this derivative liability issue for several reasons.

 5          So arguably, I agree that the language of those

 6  regulations does create some sort of derivative liability.

 7  However, the language of those provisions is complex.  I -- it

 8  took me a long time to read that one, and we don't know which

 9  provision he would be going under.  We don't know, has it been

10  established that plaintiffs have a right to bring a claim under

11  these regulations?  Do the regulations broaden the scope of

12  liability under the ADA?  If they do, are they valid?  Are they

13  a valid abrogation on of the State's Eleventh immunity?

14          I note the Armstrong case you pointed us to relied

15  heavily on Chevron when determining that the regulations were

16  valid.  Obviously, we know Chevron is no longer good law.  Oh,

17  and I already mentioned the Eleventh Amendment issue.

18          So again, if the court vacates and remand, we would

19  ask that it deal with this derivative liability issue by simply

20  letting the District Court and the parties in the District Court

21  sort it out by themselves.

22          Are there any further questions?  All right.  I thank

23  you so much.

24          JUDGE KRAUSE:  I have a couple --

25          MR. FRASCH:  Okay.

1        JUDGE KRAUSE:  -- questions for you.  Do you agree if

2   we were to determine that they're -- that the medical defendants

3   violated -- that their conduct demonstrated deliberate

4   indifference under the ADA or Rehabilitation Act, that that

5   would be imputed to the Commonwealth?

6        MR. FRASCH:  No.  Again, the regulations on their face

7   suggest some form of derivative liability for the Commonwealth.

8   That has not been expressly raised here.  And there are lots of

9   issues with raising it here for the first time without even the

10  benefit of briefing.  Again, on the face, the regulations do

11  suggest that there is some sort of derivative liability, but we

12  would ask that the court not pass on that specific issue, and

13  let the District Court sort it out in the first instance, for

14  all those reasons I just explained.

15       JUDGE KRAUSE:  You agree that, under the 1983 claims,

16  that the medical defendants, in their individual capacities, are

17  State actors and that that would be attributed to the -- their

18  conduct is attributable to the Commonwealth?

19       MR. FRASCH:  I'm sorry.  Did you say under 1983?

20       JUDGE KRAUSE:  Yes.

21       MR. FRASCH:  For -- 1983 creates personal liability

22  for those State actors.  And if they are State actors, then they

23  are personally liability.  It's not our act.  Just like the

24  State can't be liable -- I mean -- a party under a 1983 claim,

25  except in certain circumstances.

1        JUDGE KRAUSE:  But you agree that they qualify as

2   State actors?

3        MR. FRASCH:  Yes.  I mean, I think the Supreme Court

4   decision, I -- the name escapes me now -- I think that firmly

5   establishes that.  And I don't see why the Third Circuit

6   decision you referenced changes that analysis.

7        JUDGE KRAUSE:  Okay.

8        JUDGE AMBRO:  Nothing further.

9        MR. FRASCH:  Thank you so much.

10       JUDGE KRAUSE:  Thank you.

11       MS. NOVAK:  Thank you, Your Honors.  So I just have

12   four quick responses to the medical defendants, and four

13   additional to the Commonwealth defendants.  One of them overlaps

14   on this issue of the allegation that Nurse Wagman said that he

15   was faking it in the response brief.

16       This court can looked to Spruill, which was also at

17   the pleading stage, where the plaintiff in that case included in

18   his pleadings and allegations that the doctors thought he was

19   playing games, said that they didn't believe that he was really

20   in pain.  Yet, looking at all of the allegations and viewing

21   them in the light most favorable to him, found that there -- he

22   had sufficiently alleged deliberate indifference.

23       For the question of -- I'm so sorry -- exactly -- so

24   sorry.  The -- oh.  So for Dr. Mahli, for his deliberate

25   indifference, it's not our position, as my friend on the other

1  side represented, that he would need to amend to show deliberate

2  indifference for Dr. Mahli.  We think the allegations in the

3  amended complaint are sufficient.  And the allegations in the

4  complaint, as this court read, do show that Dr. Mahli witnessed

5  him drag himself across the desk, and witnessed him -- hearing

6  that he was urinating on himself.  And, again, nothing further

7  occurred on that.  And so we have to take those allegations as

8  they are, and not assume that any further medical health was put

9  in place.

10           On the question of Wellpath contracts, there is, on

11  federal government websites, evidence of contracts that this

12  court can take judicial notice of.

13           And then, Judge Krause, you had a question about --

14  for additional -- why can't we look at his additional

15  allegations as a proffer to amend.  That's exactly what this

16  court should do, and that's what the District Court's decision

17  in Gordon lays out for pro se litigants.  That's particularly

18  appropriate.

19           So then quickly, the Commonwealth's point.  So as to

20  amendment, the Commonwealth stated that Mr. Montanez had three

21  chances to state his claim.  He's only had one.  He amended

22  once, but that was to add Nurse Wagman's last name and make some

23  minor changes.  And the case from this court, Phillips

24  (phonetic), that the District Court relies on, that was a case

25  where the defendant appealed, got to amend, and then on his

1  second chance, after remand, for two of those defendants, he

2  didn't do enough.  That's many steps ahead of where we're at at

3  this case.

4       And then finally, just on the ADA point that the

5  Commonwealth made, pro se litigants plead facts.  They don't

6  plead legal theories.  And so Mr. Montanez has pled sufficient

7  facts for -- to state the claims about access to service, to

8  those services that he alleged.

9       And then finally, to the point about whether or not he

10  actually had a disability, Congress made clear in the 2008

11  amendments to the ADA that that's not the court inquiry.  He was

12  a person with an impairment, and that impacted standing, and

13  walking, to daily activities.

14       JUDGE BIBAS:  Mr. Frasch argued with some force that

15  the whole derivative liability issue that depends on some

16  regulations is complex when it got the issue of Armstrong and

17  director of Chevron, all of that should be left to remand

18  whether we impute this to the Commonwealth, et cetera.  Do you

19  have any reason to disagree?

20       JUDGE KRAUSE:  So I think it could be appropriate to

21  remand it, if this court wanted to reach it.  Armstrong relies

22  on Chevron.  Henrietta D., the Second Circuit decision that this

23  court pointed us to, is just a straight statutory interpretation

24  decision that looks to principles of contract law when looking

25  into Spending Act litigation because of the fact that the

1  Rehabilitation Act's remedy was adopted in Title II.  We think

2  that that reasoning is extremely persuasive and this court could

3  reach those legal questions, but we'd also be more than happy to

4  provide supplemental briefing.

5        JUDGE AMBRO:  Okay.

6        JUDGE KRAUSE:  Thank you.

7        MS. NOVAK:  Thank you so much.

8        JUDGE KRAUSE:  I thank counsel for their patience

9  through a long morning and early afternoon of argument, and very

10 interesting argument.  We also would like to have a transcript

11 of this argument, and we'll have the government take up that

12 cost.

13        (Proceedings concluded.)

14

15

16

17

18

19

20

21

22

23

24

25

1          CERTIFICATE OF TRANSCRIBER

2

3

4       I, Aimée Rubinowitz, do hereby certify that I was

5  authorized to transcribe the foregoing recorded proceeding; and

6  that the transcript is a true and accurate transcription, to the

7  best of my ability, taken while listening to the provide

8  recording.

9

10       I FURTHER CERTIFY that I am not of counsel or attorney

11  for either or any of the parties to said proceedings, nor in any

12  way interested in the events of this cause, and that I am not

13  related to any of the parties thereto.

14

15

16       Dated this 4th day of October 2024.

17

18                   _Aimée Rubinowitz_

19       _____

20            Aimée Rubinowitz, CET-1068

21

22

23

24

25

**1**

**1**
  37:15
**15**
  40:6
**1983**
  8:13 21:12
  31:14 37:11
  45:15,19,21,
  24

**2**

**20**
  28:22
**2008**
  48:10
**23-2699**
  4:2
**27**
  37:15
**27-page**
  18:5
**28th**
  30:15

**3**

**31st**
  30:16

**4**

**47**
  30:2 31:16

**5**

**504**
  9:6 17:11
**536**
  31:25

**9**

**90**
  37:25

**A**

**ability**
  35:4
**abrogation**
  44:13
**absolutely**
  17:16
**abused**
  42:2
**access**
  6:11,16
  7:10,11,16
  8:19 15:6
  41:18 48:7
**accommodate**
  4:10 7:11
**accommodation**
  8:1
**act**
  4:10 6:10
  9:6,13,21
  10:3 12:1
  43:4 45:4,23
  48:25
**Act's**
  49:1
**acted**
  12:12 32:3
**acting**
  8:18
**action**
  8:13 15:19
  21:12,15
**actions**
  5:13 10:18
  14:25 38:5
**activities**
  48:13
**activity**

**8:20**
**actors**
  37:7 45:17,
  22 46:2
**acts**
  28:14
**actual**
  19:6 28:10,
  20 39:15
**ADA**
  4:9 5:14 6:9
  7:15 8:7 9:5
  10:18 11:24
  12:1,4,5,8,
  10 17:9
  20:12 31:14
  41:15,17,21
  42:5,9,16,22
  43:4,10,14,
  18 44:12
  45:4 48:4,11
**add**
  5:17,18
  47:22
**adding**
  14:7
**additional**
  5:19 15:3
  16:25 23:18,
  22 24:12
  25:8,14
  26:23 28:15
  31:1,16
  43:12 46:13
  47:14
**address**
  5:1 7:14
  41:15 43:1
**adequacy**
  32:1
**adheres**
  15:25
**admittedly**
  19:5
**adopted**
  7:6 49:1

**advised**
  23:6
**affirm**
  31:5
**afternoon**
  20:4 49:9
**agency**
  9:19,20
**agree**
  10:17 21:14
  24:18 26:20
  35:2 38:22
  43:8 44:5
  45:1,15 46:1
**agreed**
  28:6 35:16
**ahead**
  48:2
**alive**
  11:13,14
**allegation**
  14:18 19:7
  26:21 30:6
  33:6,15,17,
  24 34:1,16
  38:1 39:15,
  18 40:9
  46:14
**allegations**
  6:21 16:1
  17:17,18
  18:16 20:18
  21:2 23:16,
  18,21,22
  24:13 25:8,9
  26:8,10
  27:11,14
  28:8,10,12,
  18,23 29:12
  30:6,12
  31:23,24
  34:6 35:17,
  19 36:9 39:6
  40:11,20
  41:8 43:12,
  19 46:18,20
  47:2,3,7,15

allege
  7:10 9:9
  10:6 23:24
  38:10,23
  40:23 43:4
alleged
  5:23 10:1
  12:15,21,25
  18:22 27:22
  28:3,13
  32:19 34:21
  37:22 39:9
  43:10 46:22
  48:8
allegedly
  32:23
alleges
  5:13 6:12
  7:12 10:2,4
  12:19 15:3
  16:16 19:2
  21:3 24:19
  25:2,4,18
aloud
  38:2
AMBRO
  5:16 9:3
  11:16,20,22
  16:5 18:19,
  25 20:13,21
  23:9,12,14
  26:15,18
  31:16 32:12,
  15,17 33:11
  34:17,19,21
  35:23 40:20
  41:12 46:8
  49:5
amend
  5:16 16:4
  17:11,19
  18:9 26:22
  27:6,13
  31:10 36:21
  41:3 47:1,
  15,25
amended
  10:6 16:6

18:10 27:10
28:11,20,22
29:18 33:22,
23 36:16
41:7 43:11,
13 47:3,21
amending
  38:2
amendment
  4:13 5:15,24
  6:8 10:20
  12:4,7,24
  13:6 14:24
  16:11,17
  17:8 18:4,21
  19:11,16
  20:11,13
  27:4,9,12,14
  28:4,5,6,7
  30:18 31:6,
  13 32:10
  33:19,20
  37:5 43:5
  44:17 47:20
amendments
  34:3 48:11
analysis
  12:6 46:6
angry
  40:7
answers
  8:15
apologies
  7:6
appeal
  6:4 7:9 8:5
  9:25 19:23
  20:10
appealed
  47:25
appears
  23:16 25:12
  34:1
Appellant
  4:4
appellant's
  20:9

appellees
  4:23 20:6,11
  30:19
applies
  41:2
approach
  36:22
appropriately
  32:3
arguably
  44:5
argue
  13:19 40:10
  41:4,19,23,
  25 44:3
argued
  48:14
arguing
  31:12
argument
  8:8 20:9
  27:9 33:18
  49:9,10,11
Armstrong
  44:14 48:16,
  21
assertion
  38:19,20
assistant
  14:13 15:18
assume
  33:8 47:8
assumption
  26:6
assumptions
  24:24
attempt
  4:23 16:24
  43:18
attention
  31:22
attorney
  20:5 23:5
attributable
  45:18
attributed
  45:17

August
  30:15,16
authority
  6:22 8:10
aware
  19:9,10 22:2
  29:12,22
  30:13

---

**B**

back
  7:15 26:1
  33:5,22,23
  36:9,20
  40:6,7
bad
  34:12
bars
  13:20 29:20
based
  20:8,17
  22:2,22
  23:16 24:7,
  13 25:21
  26:20 28:8
  29:16 34:24
  43:12
basically
  33:15 35:18
basis
  27:6 35:3
  39:8
bathroom
  25:7 29:14
bedding
  6:17,23 7:12
Beers-capitol
  40:16
behalf
  20:5
behavior
  13:5
believed
  20:19 25:11
  38:21

believes
  32:19 38:18,
  19
benefit
  45:10
Benner
  11:18,19
BIBAS
  4:6 8:6,12,
  19 10:8,11
  11:8,10,13
  21:7,10,17
  22:12 23:1,
  11 27:19
  35:11,20
  36:1,4,7,13,
  25 37:6,10,
  13,16 38:7,
  12 40:5,25
  48:14
bit
  7:21 11:23
  12:23
body
  12:18 13:11
  33:25 34:1
bono
  19:25
boost
  16:22
bottom
  29:1
bound
  9:20
briefing
  9:24 45:10
  49:4
briefly
  41:15 43:22
briefs
  4:24 34:2
  41:7,8
  43:13,23
bring
  44:10
brink
  12:16

broaden
  44:11
brought
  16:20 25:23
  31:22
Bryant
  6:24 7:6 8:3
bunch
  36:13,14
  37:7
burden
  38:9,22
button
  16:16

——————————

C

call
  24:10
called
  33:5
calling
  40:13
capacities
  45:16
capacity
  10:12,13,21,
  22 30:24
care
  11:7 14:14,
  15 15:3,11,
  12,13 19:10,
  12,14 20:16
  32:2 35:1,6,
  8 41:22
carry
  35:14
case
  4:8,23,25
  6:3 7:9
  13:2,7,23
  14:1,9 15:19
  24:14 27:8
  31:21 37:18,
  23 38:23
  40:16 44:14
  46:17 47:23,

24 48:3
cases
  40:16
category
  10:14
cell
  12:17,18
  13:3,11,17,
  20,23 14:1
  15:5 16:21
  23:17,25
  25:7,19,21,
  22 26:3,10
  29:2,3,8,20,
  22 32:24
  33:4,5,25
  35:18 39:22
center
  16:16
cetera
  35:14 48:18
challenge
  38:7
chance
  18:9 41:3
  48:1
chances
  47:21
change
  15:22
charge
  33:10
check
  23:9
Chevron
  44:15,16
  48:17,22
chosen
  41:8
circuit
  6:24 8:9
  46:5 48:22
circumstance
  26:13
circumstances
  45:25

cite
  40:17
cited
  38:24
claim
  5:11,20,22
  11:9 14:24
  16:11 17:11,
  14 19:15
  23:22 26:21
  27:12,15
  28:7 30:18
  31:17,18
  32:1,10
  34:18 38:15
  40:4 41:6
  42:1,9,25
  43:10,14,18,
  20 44:10
  45:24 47:21
claims
  4:9,10,13,21
  5:15 6:10
  10:23 16:11
  17:7,9
  18:20,22
  20:11 27:11
  28:9 31:5,6,
  14,18 41:15,
  24 42:1,5
  45:15 48:7
clarify
  21:21
classes
  4:9
clear
  48:10
client
  5:10 21:25
  22:10,16
  23:3 30:22
clients
  22:3 30:22
  31:7 42:21
color
  8:18
Commonwealth
  8:21 11:14

31:4 45:5,7,
18 46:13
47:20 48:5,
18
**Commonwealth'
s**
47:19
**compare**
32:11
**complaint**
5:21 6:12,17
9:10 10:6
11:21 16:1,7
17:10,17
18:8,11,22
19:6 20:18
21:3 23:19,
24 25:2,4,8,
18 26:22
27:21,22
28:10,20,22
29:16,18
30:11 33:19,
23 34:19,20,
24 38:2 39:3
41:7 43:10,
11,13 47:3,4
**complaints**
28:11
**completely**
18:12,15
30:12 35:4
**complex**
44:7 48:16
**complicated**
9:7,18
37:18,19
**concede**
5:10 31:11
**conceded**
30:16
**concededly**
16:2
**concedes**
32:7
**concession**
32:8,9

**conclude**
39:14
**concluded**
17:14 49:13
**condition**
7:20 8:2
15:20 20:20
33:7
**conditions**
25:3
**conduct**
12:15,20
13:4,20,21
45:3,18
**confusing**
10:17
**Congress**
48:10
**considered**
9:19
**constitutes**
7:2
**context**
10:15 14:21
15:23 18:3,
4,21
**continued**
29:24
**contract**
8:15,25 9:16
48:24
**contracted**
21:16
**contracting**
9:1
**contracts**
9:11,12 22:1
23:11 47:10,
11
**contrast**
34:7 38:20
40:11
**conversation**
19:23
**correct**
18:8 20:24
35:1 40:22

41:5
**Correction**
10:4
**corrections**
9:17 12:12
39:25 40:3,5
**correctly**
4:11,14
**cost**
49:12
**counsel**
5:2 41:2
49:8
**counterfactua
l**
7:22
**couple**
44:24
**court**
4:4,21,24
5:1 6:1,4,7,
10 7:5,8,12
8:3,24 9:18
10:7 11:3,24
12:2,6 13:4,
7 14:12
15:17,18,25
17:13,24
18:12 19:16,
19 20:12
26:11 27:7
30:24 31:3,5
33:8,15
34:13,16,23
36:19,21
37:18,19
41:10,16,25
42:2,7,8
43:15,18
44:2,3,18,20
45:12,13
46:3,16
47:4,12,16,
23,24 48:11,
21,23 49:2
**court's**
6:19,20 8:14
13:1,22

18:24 22:13
23:2 31:5
42:3 47:16
**crawl**
13:3,9 33:11
37:4 39:22
**crawled**
21:4 29:4
**crawling**
25:6 26:9
27:23 29:13
30:8
**crawls**
27:20 39:24
**create**
41:11 44:6
**creates**
15:14,15
45:21
**cross-
contamination**
33:21
**curious**
8:6
**current**
5:20 22:21
**custom**
17:15,22

---

### D

**daily**
48:13
**damages**
10:21 11:13
12:1
**Davis**
5:8
**day**
13:17 21:1
26:5 29:2
34:9 36:10
**days**
20:15 23:17,
25 26:3
29:25 35:13

deal
  44:19
decide
  26:16,19
  32:13
decides
  36:17 42:7
decision
  6:20 7:7
  8:15 13:2,8,
  22 33:9,11,
  14 35:3 37:4
  46:4,6 47:16
  48:22,24
decisions
  6:19,24 33:2
  37:1,2
defeat
  15:12
defend
  4:23 33:1
  35:2 36:25
  37:2,3,4
defendant
  35:7,8,22
  37:15,19,20,
  23 47:25
defendant's
  32:4,6
defendants
  4:9,15,16
  5:5,13 6:6
  11:4 13:22
  18:17 19:5
  31:4 36:14
  38:24 44:1
  45:2,16
  46:12,13
  48:1
defending
  33:13,14
defense
  42:19,20
defenses
  42:11 43:2
definition
  42:15

deliberate
  4:13 11:25
  12:2,3,7,10,
  25 14:24
  15:12 16:13
  18:2 24:4
  26:2,21
  27:11,15
  31:25 38:4,
  13,14,16
  39:16 40:23
  45:3 46:22,
  24 47:1
deliberately
  14:13 15:18
demonstrated
  45:3
demonstrates
  39:16
denial
  14:18,22
  15:2,11
  41:18
denied
  8:19
department
  6:18 9:17
  10:4 12:12
  25:23
depends
  48:15
derivative
  43:22 44:4,
  6,19 45:7,11
  48:15
describes
  29:19
desk
  21:4 25:6
  29:4,22 47:5
determine
  34:3 45:2
determined
  20:25 25:13
determining
  42:2 44:15

diagnoses
  20:25
difference
  26:22 40:9,
  11
dignity
  38:15
directly
  23:6
director
  48:17
dirty
  27:18
disabilities
  7:16
disability
  4:11 12:14
  13:24 16:11
  18:3 48:10
disabled
  7:17 9:1,2
  42:14,16
disagree
  48:19
disc
  15:7 19:13
discretion
  42:3
discussing
  23:4
dismiss
  21:5 27:3
  28:1 31:15
  39:5 40:19
dismissal
  20:10 31:5,
  19
dismissed
  7:9 31:12
dismissing
  4:21
disregard
  12:13
distinct
  4:9,22 12:5
  31:25

distinction
  7:1
distinguish
  15:8
distinguishin
g
  15:10
district
  4:21 6:10
  10:7 11:24
  12:6 17:13
  18:5,12,24
  19:16 31:5
  36:17,19,21
  42:2,3 44:20
  45:13 47:16,
  24
divulging
  19:1
DOC
  21:16
doctor
  8:16 10:13
  13:23,25
  14:12 21:6
  25:10,25
  33:10 34:9
doctors
  8:12,19,21
  10:8 11:11
  21:11,14
  27:16,19
  30:16 33:3
  46:18
doctrines
  5:1
door
  25:19,22
  29:2,3,8
double
  6:23 7:17
drag
  12:18 13:11
  33:24 34:1
  47:5
dragged
  29:21

dragging
  25:24 26:9
  27:24 33:24
draw
  39:4
drawing
  7:2
Drs
  4:18
due
  30:9
dumped
  35:18
Dura
  12:3

**E**

earlier
  15:1 30:16
early
  49:9
edema
  20:22
edge
  13:11
edges
  4:25
Edwards
  4:18 20:7
  30:7
Eighth
  4:13 5:15
  10:20 12:4,
  7,23 13:6
  14:24 16:11
  17:8 18:3,21
  19:11 20:11,
  13 27:12,14
  28:7 30:17
  31:6 37:5
  43:4
element
  16:12 40:15
Eleventh
  44:13,17

eliminates
  35:4
Ellers
  4:19 18:25
  19:2 31:8
emergencies
  16:18
employees
  12:16
employer
  10:19
encourage
  30:21
engaged
  8:13 21:11,
  15 31:11
engaging
  28:14
ensure
  7:16
enter
  25:20
entity
  8:7,11 9:5,6
  17:4,8
error
  11:24
errors
  4:22 6:7,9
escalate
  33:9
escapes
  46:4
essentially
  8:17 24:9
  30:14 41:5
established
  35:5 44:10
establishes
  31:25 33:1
  46:5
evidence
  17:11 24:25
  26:25 38:13
  47:11
exact
  28:21

exam
  42:5
examination
  13:20 25:12,
  16 26:7
  32:22
examinations
  25:22
examine
  13:18 29:21
  34:11
examined
  13:18,19
  24:19 25:19
  29:2 33:4
exasperated
  40:8
exception
  29:15 30:5
excess
  27:18
exclusive
  10:25
exclusively
  8:17
excruciating
  13:3,9,12
  14:11 15:5
excuse
  20:9 28:13
exist
  42:6
existence
  38:10 42:1
expect
  24:9 33:8
experiencing
  24:8,11
explained
  12:2 45:14
explicitly
  41:22
expressly
  45:8
extreme
  20:15

extremely
  49:2

**F**

face
  39:4 45:6,10
facility
  16:10
fact
  12:10 13:12
  14:10 19:13
  25:20 26:4
  30:9 48:25
factor
  15:11
facts
  5:23 15:4
  23:20 26:23
  27:13 28:3
  37:19,20
  41:5 48:5,7
factual
  39:18
failed
  5:11
failure
  4:10 7:11
  12:8,9
  14:14,15
faking
  20:19,21
  26:5,7 32:8,
  13,17 33:16
  34:5,16
  35:12,14
  36:11 37:24
  38:8 40:8
  41:9 46:15
fall
  15:7
falling
  16:21
favor
  20:11 39:5
  40:11

**favorable**
46:21
**federal**
9:8,11,12,14
10:2 12:14
17:12 21:7,
22,23 22:1,
3,11,17
23:4,6,8
30:22 47:11
**fell**
15:4 19:4
**file**
43:13
**filed**
12:19 31:20
**finally**
48:4,9
**find**
15:25 18:13,
15 19:25
38:12,21
**findings**
18:7
**firmly**
46:4
**fit**
18:25 43:2
**fitting**
10:14
**floor**
12:18 13:10
25:25 26:9
27:20,23
29:13 30:9
33:12,24
34:1 39:22,
24
**focused**
36:5
**focuses**
13:8
**force**
48:14
**form**
28:16 45:7

**forward**
35:14 43:1
**found**
8:18 12:7
15:18 37:5
46:21
**fourth**
8:23
**Frasch**
31:3,17
32:14,16,18,
25 33:13,21
34:18,20
35:2,16,22,
24 36:2,5,8,
22 37:3,9,
11,14,17,25
38:3,9,14,22
39:11,13,15,
18,23 40:10,
22 41:4,14
43:6,8 44:25
45:6,19,21
46:3,9 48:14
**friend**
21:10 37:1
46:25
**full**
14:21
**function**
8:17 10:25
27:4
**funding**
9:8,13,16,
19,21 10:2
17:12 21:8
22:4 30:23
**funds**
9:14 21:22
22:11,17
23:4,6,8
**funneled**
9:22
**Furgess**
6:20
**futile**
5:25 16:4

18:13,15,18
27:10 28:5
31:13 32:11
34:3

---

**G**

**games**
46:19
**gather**
30:21 31:11
**Georgia**
6:19
**Gillis**
13:22
**give**
15:20,21
41:3
**God**
37:24 38:8
40:8
**good**
4:3 6:22
7:23,24
20:2,3 41:22
44:16
**Gordon**
47:17
**gotta**
34:11
**government**
8:17 22:6
47:11 49:11
**governmental**
8:17 10:25
**grab**
28:24
**grant**
20:10
**grants**
21:24 23:11
**great**
13:13
**grievance**
12:20,22
**grievances**
12:19

**grieved**
12:20
**grounds**
26:25 33:14
**guard**
34:9 40:13
**guy**
40:14

---

**H**

**halting**
6:15
**happened**
14:25 24:10
**happy**
5:2 6:2 9:23
19:18 49:3
**harm**
13:14 16:24
**health**
47:8
**hear**
14:2 15:21
**hearing**
47:5
**heavily**
44:15
**held**
6:10,20 13:4
14:12
**helpful**
15:16 28:7
**helps**
7:14
**Henrietta**
48:22
**herniated**
15:7 19:13
**hey**
25:9 40:13
**higher**
12:5,8
**hold**
11:1 43:19

holdings
  18:7
holds
  7:22
hone
  8:3
Honor
  4:3,7 7:5
  10:18 17:6,
  23 22:8
  24:17 26:17
  30:25 41:14
Honors
  20:2 46:11
hospital
  16:15 25:14
  32:22
hours
  34:8

I

idea
  8:10 41:9
ignore
  34:4
II
  49:1
illness
  42:18
immediately
  15:12
immunity
  44:13
impacted
  48:12
impairment
  15:25 48:12
important
  13:7 14:21
impute
  48:18
imputed
  10:19 45:5
inaccessible
  12:17

incident
  42:15
include
  6:17 41:8
  42:17
included
  5:24 15:4
  46:17
includes
  16:3 39:19
including
  18:10
incontinence
  24:9
incontinent
  20:14
indifference
  4:14 11:25
  12:2,4,7,10,
  25 14:24
  15:12 16:13
  18:3 24:5
  26:2 27:11,
  15 32:1
  38:4,13,14,
  16 39:17
  40:24 45:4
  46:22,25
  47:2
indifferent
  14:13 15:18
indirect
  23:7
indiscernible
  7:7 19:15
individual
  4:15 8:21
  10:21 11:5,
  11 18:17
  32:4 37:11
  45:16
individually
  19:11
individuals
  5:15 10:12
  42:17

inferences
  39:4
information
  5:19 16:3,6
  18:9 19:1
  22:3,22
  30:21,23
  39:7
informed
  13:5 21:6
  22:10,16
  29:5
initial
  6:14 20:19
  21:1 23:15
  42:15
injunctive
  10:22 11:2,
  9,14
injury
  13:13 14:16
  15:7,15
inmate
  25:23,24
  26:2 34:7,8,
  10,12 39:1,
  25 40:2
inmate's
  42:4
inmates
  24:7
inquire
  23:3
inquiry
  23:1 32:5
  48:11
insight
  38:17
instance
  45:13
insulate
  16:24
intention
  19:20
interacted
  4:16,19

interaction
  36:18 37:6
interactions
  9:2 37:8
interested
  41:16
interesting
  49:10
interfered
  19:12
interpretatio
n
  48:23
investigation
  39:2
involves
  31:23
issue
  22:15 25:20
  32:12 33:22
  42:5,24
  44:4,17,19
  45:12 46:14
  48:15,16
issues
  17:25 18:1
  45:9

J

Jacob
  31:3
Jose
  4:4
judge
  4:1,6 5:4,7,
  10,16 6:22
  7:1 8:6,12,
  19 9:3,12
  10:8,11
  11:8,10,13,
  16,20,22
  14:5,7,17
  15:8 16:5
  17:3,5,13,20
  18:5,19,25
  19:20 20:3,

13,21 21:7,
10,17,21
22:1,5,12,
18,21 23:1,
9,11,12,14,
24 24:4,14,
22,24 25:1,
16,24 26:15,
18 27:2,16,
19,25 28:3,
16 29:18
30:20 31:2,
9,16 32:12,
15,17,21
33:11,17
34:17,19,21
35:11,20,23
36:1,4,7,13,
17,25 37:6,
10,13,16,21
38:1,4,7,12,
17 39:3,12,
14,16,21
40:5,18,20,
25 41:12
42:24 43:7
44:24 45:1,
15,20 46:1,
7,8,10 47:13
48:14,20
49:5,6,8

**judgment**
26:12
**judicial**
22:6 47:12
**jury**
26:15,18,25
32:12 38:12,
21 39:14

---

**K**

**kind**
13:5 32:25
**knew**
25:2 34:14
**knowing**
12:12 23:25

**knowledge**
12:21 19:12
35:9 38:11
40:14
**Krause**
4:1 5:4,7,10
6:22 7:1
9:12 14:5,7,
17 15:8
17:3,5,13,20
19:20 20:3
21:21 22:1,
5,18,21
23:24 24:4,
14,22,24
25:1,16,24
27:2,16,25
28:3,16
29:18 30:20
31:2,9 32:21
33:17 37:21
38:1,4,17
39:3,12,14,
16,21 40:18
42:24 43:7
44:24 45:1,
15,20 46:1,
7,10 47:13
48:20 49:6,8

---

**L**

**lack**
7:10,11 18:2
**lacked**
6:11
**language**
44:5,7
**laughing**
32:25
**laughs**
32:23
**law**
8:18 24:14
44:16 48:24
**lays**
47:17

**lead**
14:15
**learned**
30:13
**leave**
26:2 31:10
**leaving**
20:14
**left**
23:17,25
39:21 48:17
**legal**
4:22 6:7,9
17:25 18:1
48:6 49:3
**lends**
26:6
**letter**
5:2 8:24
22:13 23:2,
10
**letting**
44:20
**level**
5:22 9:15
14:23 15:11,
13
**liability**
5:1,13 6:5
8:25 9:4,5
10:20 12:24
17:4 37:12
41:17,21
43:23 44:4,
6,12,19
45:7,11,21,
23 48:15
**liable**
8:20,23
19:11 37:5
45:24
**liberally**
39:4
**lied**
19:3 33:6
**light**
28:4 31:20

**46:21
Lillian**
4:4
**limited**
19:23 28:18
30:10
**litigants**
28:17 47:17
48:5
**litigation**
37:15 48:25
**loans**
21:23 23:11
**long**
44:8 49:9
**longer**
44:16
**looked**
46:16
**lot**
14:2,3 16:2
18:16 36:23
41:12
**lots**
45:8
**lower**
12:9,10
**lying**
19:7 36:10

---

**M**

**made**
11:24 12:18
13:2,9 17:1
27:8 29:22
33:3,18
40:21 48:5,
10
**Madigan**
7:6 8:4
**Mahli**
4:16 13:16
18:23 20:6
21:1 23:25
24:19,20
25:5,13,19,

20 26:7,8,10
27:15 28:8
29:1,2,5,6,
8,10,11,17,
19,22 30:3,
11,13,18
33:5,7 34:24
35:20 36:3
46:24 47:2,4
**Mahli's**
26:12
**major**
15:1
**majority**
6:3,4
**make**
4:22 13:9
24:22 33:9
37:4 47:22
**makes**
40:9,10
**making**
13:14 22:21
35:3
**malpractice**
15:9
**man**
13:3
**manner**
13:14
**materials**
22:5
**matter**
23:5
**mattress**
6:23 7:4,18,
25
**meals**
41:18
**meaningful**
6:11,16
**means**
33:25
**meant**
13:6
**medical**
4:14 6:18

7:3,18 8:2
11:6 13:18,
24 14:1,11,
12,14 15:9,
12,13 16:25
19:8,10
20:6,11,16,
25 21:16,20
25:23 28:9
30:19 32:1,
2,19 33:2,9,
11,14 34:25
35:3 38:16
41:22 44:1
45:2,16
46:12 47:8
**medically**
13:5
**medication**
14:18,22
15:22
**meds**
15:22
**meet**
12:8,9,10
**meeting**
41:12
**Mel**
32:3,11 33:2
34:4 35:17,
25 36:5,7
**Melanie**
32:8
**Melanie's**
37:3
**mentioned**
44:17
**merits**
4:22
**met**
35:6
**mind**
28:24 32:4
**mine**
32:20
**minor**
47:23

**minutes**
4:5 14:8
40:6
**misrepresente
d**
33:7
**missed**
36:23
**mobility**
6:18 15:24
**moment**
13:8
**Montanez**
4:1,4,6,7,8,
17 6:11 9:9
10:1 11:4,25
12:9,19,24
13:11,25
14:25 15:20
16:3,8
17:10,18
18:8 19:2,
12,21 24:8
25:14 26:5,
14,22 34:15
38:17 42:14
47:20 48:6
**Montanez's**
7:9,19 13:17
20:18 21:11
23:16 43:24
**moot**
11:10
**morning**
4:3 20:2,3
49:9
**motion**
21:5 27:3
28:1 31:15
39:4 40:18
**motions**
17:2
**move**
13:14 15:5
20:23 34:18
39:9

**moves**
43:1

---

## N

**Nalley**
4:19 20:7
30:7
**named**
18:2
**necessarily**
7:20 9:9
17:17
**night's**
7:24
**nodded**
29:6,23
**non-medical**
19:8,9
**non-movement**
39:5
**nondiscrimina
tion**
9:1
**normal**
19:14
**note**
44:14
**notice**
22:6 47:12
**noting**
24:18
**notion**
32:23
**Novak**
4:2,3,4,7
5:6,9,12,18
6:25 7:5
8:8,14,22
9:4,14
10:10,16
11:9,12,15,
18,21,23
14:6,9,20
15:10 16:8
17:4,6,16,23
18:21 19:2,

17,22 46:11
49:7
**number**
34:21 37:1,
2,15
**nurse**
4:16 12:16,
25 13:2,8,
10,15 16:9,
17 18:22
20:19 21:2
29:16 31:18
32:3,8,11
33:2 34:4,
10,11,13,23
35:17,20,21,
23,24,25
36:5 37:3
39:7,25 40:3
46:14 47:22
**nurses**
27:16 33:1
34:8 40:13

---

**O**

---

**objective**
35:6
**obligation**
32:20
**observed**
24:11,20
25:5,6 26:8,
10 27:23
28:14 29:13
30:8
**obvious**
24:16
**occurred**
47:7
**odd**
10:13
**office**
19:23
**officer**
30:24 39:25
40:3,5

**official**
10:12,13,22
**officials**
38:25
**open**
9:18 24:16
**operative**
31:7 33:23
43:11,20
**opinion**
12:3 18:5,24
**opportunities**
41:6
**opportunity**
42:13 43:14
**opposition**
5:23,24 15:4
17:21 21:5
23:20 27:3,
25 29:7 30:2
31:15,20
33:18 34:2
36:15 41:12
43:25 44:1
**oral**
20:9
**order**
18:13,14
30:20
**original**
28:10,11
41:6 43:10
**outlined**
5:20
**overlaps**
46:13

---

**P**

---

**P.A.**
4:18 15:17
20:7 30:7
**pages**
18:6 28:16,
22,25 31:16
**pagination**
28:21

**pain**
13:3,9,12
14:2,3,11
15:5,21,22,
24 20:15
34:7 40:12
46:20
**painful**
17:1
**papers**
17:21 42:4
**par**
7:16,24
**parallel**
31:24
**paralysis**
6:14 24:8
**paralyzed**
4:18 13:12
14:3,10
20:14 23:17
24:1,21
25:25 39:8
**part**
9:21 16:5
**parties**
8:24 44:20
**parts**
9:20
**party**
45:24
**pass**
36:11 45:12
**past**
22:16
**patience**
49:8
**Patton**
5:8
**Paula**
5:7
**Pearson**
13:2 31:23,
24 33:1
34:7,11,13
35:4,5,10
40:12,15

**Pennsylvania**
4:12 9:17
10:4 12:11,
12
**people**
7:16,17 9:1,
2
**performing**
8:16 10:24
**period**
4:17 6:14
**permitted**
42:10 43:13,
17
**persists**
35:13
**person**
36:18 41:2
48:12
**personal**
45:21
**personally**
45:23
**persuasive**
49:2
**Phillips**
47:23
**phonetic**
6:19 12:3
47:24
**physician's**
14:13 15:17
**place**
24:10 38:23
47:9
**plaintiff**
11:1 13:9,23
14:2,10,15
32:9 34:15
41:19 42:8,9
46:17
**plaintiff's**
20:8 32:7
42:4
**plaintiffs**
44:10

plausibility
36:12
plausible
41:11
plausibly
32:18 38:10,
23 40:23
43:3,9
playing
46:19
plead
37:22 38:10
48:5,6
pleading
35:25 37:22
43:11,21
46:17
pleadings
7:10 46:18
pleads
4:8 41:10
pled
33:15 34:15,
22 48:6
point
11:4 18:23
29:9 30:15
32:21 36:12
37:8 47:19
48:4,9
pointed
6:6 44:14
48:23
points
14:22
policy
17:15,21
pool
36:10
position
8:22 15:3
21:11,12
34:15 41:10,
11,23 42:21
43:15,16
46:25

positively
26:23
precisely
33:3,8
precluded
18:10 19:14
precludes
38:2
prejudice
31:6,9,13,19
prescribe
13:6
pressed
16:16
pressing
5:14 17:7
Preston
4:18 14:17,
20 16:1,9,
20,22 20:6
30:7
Preston's
14:25
presume
24:20
Price
4:2 5:7
principles
48:24
prior
26:5
prison
4:20 6:12,
13,21 8:20
10:9 11:5
12:22 16:14
24:6 25:22
38:24
prisoner
37:14
prisons
11:19
private
10:11,13
pro
19:25 28:17
34:17,19,20

39:3 40:25
41:2 42:4
47:17 48:5
proceed
4:1 10:3,5
proceeding
6:8
proceedings
49:13
proceeds
4:11,14
process
12:21,22
professional
20:15
proffer
27:5 47:15
program
6:21 7:3,11
8:20 18:2
programs
6:12,13
prompt
24:12 25:13
prompted
28:15
prong
35:6,7,9
38:10 40:23
prongs
35:5
pronounces
4:6
properly
5:23
prove
38:9
provide
9:23 14:14,
15 21:16,19,
20 25:14
49:4
provided
22:3 25:21
28:17
provider
19:8

providers
11:6 14:12
19:9,10
21:18 24:6
27:23 28:9,
14 29:13
30:7
providing
11:7 15:11
21:19 39:7
provision
44:9
provisions
44:7
public
8:7,10 9:5,
10
pull
27:17 28:24
purports
13:18
purpose
7:15
purposes
33:20
pursuing
8:8
put
6:1 8:24
15:3 16:6
30:20 47:8

---

Q

qualify
9:13 46:1
question
7:8,14,23
8:2,4,9,15,
23 9:7,15,
18,23 10:22
13:15 16:5
19:4 20:13
22:15 23:15
32:14,18
35:5 39:24
43:2,9,12,17

46:23 47:10,
13
**question's**
13:1
**questions**
6:1,3,5
19:18 20:12
31:1 44:22
45:1 49:3
**quick**
46:12
**quickly**
20:23 47:19
**quote**
34:13

_____

**R**

_____

RA
31:14
**raise**
41:23 42:13,
19,20
**raised**
35:10 40:15
41:19,20
43:23 45:8
**raising**
20:10 45:9
**reach**
48:21 49:3
**read**
27:21 39:3
40:7 44:8
47:4
**reallege**
30:17
**reason**
27:5 40:3
48:19
**reasonable**
34:25 38:12
39:12,14
**reasoning**
49:2
**reasons**
42:11 44:4

45:14
**rebuttal**
4:5 14:4
19:18
**receive**
9:8 21:22
22:3,10,17
23:4,6
**received**
4:19
**receives**
10:2 30:22
**receiving**
9:14 23:7
**recent**
5:2
**record**
9:10 18:11
27:3
**recovery**
6:15
**redo**
36:24
**referenced**
46:6
**referred**
35:24
**referring**
25:17 37:22
**refuses**
32:23
**refusing**
27:16
**regard**
23:23 26:23
30:23 32:3
**regulations**
42:16 44:6,
11,15 45:6,
10 48:16
**rehabilitatio
n**
4:10 6:10
9:6,13,21
10:3 12:1
16:15 17:9
43:4 45:4

49:1
**relied**
44:14
**relief**
11:14 29:19
**relies**
47:24 48:21
**rely**
33:2
**relying**
22:18,20,24
**remaining**
4:18
**remains**
11:13,14
**remand**
6:7 17:11,25
19:21 42:7
43:16 44:2,
3,18 48:1,
17,21
**remanded**
5:24 10:6
**remedy**
11:2,10 49:1
**reported**
21:2 29:15,
17 30:4
**reporting**
25:25 26:14
**represent**
36:2
**representatio
n**
20:1 22:22
**represented**
47:1
**representing**
19:21 31:4
**reputation**
26:6
**request**
7:4 24:15
29:19
**requesting**
32:22

**requests**
24:7
**required**
21:20 38:25
42:3,6
**research**
22:12,14
**reserve**
4:5
**residual**
14:16
**resolve**
6:4 7:8 8:4
9:25 11:3
**resolved**
8:4 9:25
13:1
**resolving**
6:4
**respect**
9:19 18:16
27:12 28:7,
10 30:11
34:23
**respectfully**
32:10 34:14
39:11,18
**response**
23:2 39:9
46:15
**responses**
46:12
**restroom**
27:24
**results**
19:3,14
**retained**
19:22
**retreat**
7:21
**return**
19:18 30:23
**returned**
4:20
**Returning**
23:15

returns
  32:24
reversal
  18:1
reverse
  6:7 44:2
review
  30:1
Rhodes
  34:11,14
rights
  12:14
rigid
  41:1
rise
  5:22
rising
  14:23
risk
  13:13 14:16
  15:14,15,24
Rivello
  5:8
rule
  7:12,13
runs
  6:5

---

**S**

---

SCI
  11:18
scope
  19:23 44:11
screaming
  34:7 40:12
Seabrooks
  20:2,4,5,17,
  24 21:7,9,
  14,18,25
  22:2,8,14,
  20,24 23:3,
  13,15 24:3,
  6,17,23,25
  25:4,18
  26:4,17,20
  27:7,21

28:2,6,20
  30:1,20,25
secondary
  43:9,11
section
  9:6 21:12
  29:19
see--
  24:23
seeking
  17:24
seeks
  11:25
send
  25:14 36:20
sending
  30:15
separate
  4:8
service
  6:21 7:3
  8:20 18:2
  48:7
services
  6:12,13
  21:16,19,20
  48:8
set
  20:18 23:19,
  21 25:8
  26:23 28:8,
  13
Seventh
  6:24
short
  16:1
show
  12:1 47:1,4
showed
  38:4
shower
  6:20
shows
  32:10
sick
  24:10

side
  21:10 37:1
  47:1
similar
  31:24
simply
  21:2,6,15
  29:8 42:8
  43:3 44:19
sink
  27:18
sinks
  41:18
situation
  7:19
sleep
  7:24
slightly
  9:7
slow
  6:15
Smithfield
  11:16
soaked
  27:20
sort
  15:24 27:5
  36:21 39:1
  44:6,21
  45:11,13
sounds
  32:12 36:22
span
  28:18
sparse
  16:2
speak
  11:23
speaking
  22:25
specific
  17:25 18:1
  22:14 24:15
  28:22 39:6
  45:12
specifically
  26:8 27:15

29:1,7 30:3
  38:24
Spending
  48:25
spinal
  13:13,25
  15:1,7
spotter
  42:5
Spruill
  13:22 15:16,
  19 46:16
stage
  11:3 46:17
stand
  15:2 32:2
  35:19
standard
  12:5,8,9,11
  35:6 41:1
standards
  12:3 20:15
  35:1
standing
  48:12
stark
  34:6
start
  6:6 31:6,9,
  18
state
  4:12 5:11
  6:11 8:13,
  22,25 9:19,
  20 10:2,3,19
  12:11,16
  19:15 21:2,
  12,15,20
  26:8 30:6
  32:4 34:12
  40:4 41:6
  42:10 43:14,
  18,19 45:17,
  22,24 46:2
  47:21 48:7
State's
  5:14 44:13

stated
  5:20 17:9
  42:8,25
  47:20
statement
  24:18 36:15
  37:23 38:6
states
  21:5 29:1,5,
  7 30:3
stating
  5:22 14:24
statutory
  48:23
stenosis
  13:25 20:22
step
  7:15
steps
  48:2
stop
  38:8 40:8
stopped
  37:24
straight
  48:23
strange
  11:1
strongest
  18:20,22
subjective
  32:5 35:7
subjectively
  32:17 38:18
submit
  23:10
subprongs
  31:25
substantially
  12:13 42:22
sue
  10:13
sued
  10:21
suffered
  15:7

suffering
  14:16 15:14,
  15 16:12
  42:18
suffices
  16:12
sufficient
  6:21 13:15
  16:2 47:3
  48:6
sufficiently
  4:11 12:25
  46:22
suggest
  17:21 22:7
  23:18 30:12
  36:20 40:2
  45:7,11
suing
  11:6
supervising
  23:5 33:3
supplemental
  9:24 49:4
support
  23:22 25:9
  26:21 27:11,
  14 28:12
Supreme
  6:19 8:14
  46:3
surgery
  4:20 15:1
  20:22 30:10
surprising
  28:18
symptoms
  24:8
system
  4:20 12:22

—————————
        T
—————————

taking
  36:23
talk
  5:2 6:2 8:6

  12:23
talking
  35:21 40:18
tangible
  14:16
telling
  15:19
tells
  39:23
temporary
  42:18
ten
  14:8
terms
  34:25
test
  16:13
theories
  42:12 48:6
theory
  41:17,21
  42:9,10,23
thing
  13:10 36:20
  43:23
things
  24:12 29:15
  34:21 36:14,
  19,23
thinking
  9:24
thought
  20:23 26:5
  32:8 33:16
  34:4 35:12
  41:9 46:18
three-and-a-
half
  28:16
three-and-a-
half-pages
  28:19
time
  4:17 6:14
  14:4,5 19:17
  35:11 36:23,
  24 37:14,24

  41:16 42:14
  44:8 45:9
times
  15:4
title
  8:7 49:1
today
  20:9 22:10
toilet
  15:6 16:17,
  21 27:17,18
toileting
  6:17
toilets
  41:18
told
  19:13 22:19,
  25 25:5,9,10
  29:3,8,10
  30:3
top
  12:20
total
  29:24 36:24
touch
  43:22 44:3
touched
  43:24
track
  14:7
traditionally
  8:16 10:25
transcript
  49:10
transferred
  11:5 16:14
treating
  8:1,25 32:20
treatment
  7:3,18 16:25
  24:7,12
  25:15,21
  30:10 32:1
true
  17:23 24:17
  26:14 30:14

truncated
9:10 17:17
Turning
13:16
turns
20:21
typically
25:22

---

**U**

---

ultimately
10:19 20:24
36:17
umbrage
18:6
unable
21:3,6 29:9
30:4
unaware
23:7
uncomplicated
42:16
uncontrollabl
y
24:1 26:1
underlying
8:2 13:24
14:11
understand
25:19 26:11
33:21 39:8
41:14
understanding
20:8
understood
17:13
undue
14:16 15:14,
15,24 16:12
unique
40:15
unit
13:18 14:2
unpublished
7:7

unsettled
4:25 8:9
update
23:10
urinating
24:1,21 25:6
26:1 29:5,
10,22,24
30:5,8 35:13
47:6
urination
26:10
urine
27:20 36:10

---

**V**

---

vacate
42:7 44:2
vacates
44:18
valid
44:12,13,16
versus
4:2 7:3,6
8:3 9:16
view
10:14
viewed
33:19 39:7
viewing
46:20
violated
42:22 45:3
violation
12:13
violations
43:4
vitals
33:5
void
30:12

---

**W**

---

Wagman

4:16 12:16
13:1,10,15
18:23 31:7,
18 33:2
34:23 35:23,
24,25 36:6,7
37:23 39:7
46:14
Wagman's
47:22
waiting
26:13
Wakefield
5:7
walk
15:2 21:3,6
29:4,9,21
30:4 34:14
39:19,23
40:1,2
walked
29:6,11,23
walking
40:6 48:13
wanted
48:21
wanton
13:5
watching
27:19
websites
22:6 47:11
weeks
15:1
weight
8:10
Wellpath
8:7,12,21
9:3,4,10
10:1,11
17:3,7 18:7
20:6 21:7,
11,15,22
23:6,7 47:10
Wellpath's
9:4 17:4,11
21:14

West
8:15
wheelchair
12:17 13:4
16:22
whoa
20:23
wishes
27:8
witnessed
47:4,5
words
40:25
work
9:16
working
10:11 21:19
worse
40:14
wrong
18:15 36:19
wrote
18:5

---

**X**

---

X-RAY
19:3

---

**Y**

---

years
22:16,19,25
Yeski
6:19
Young
35:10 38:23
40:16