

October 30, 2024

Rights Behind Bars
1800 M St. NW, Front 1, #33821
Washington, DC 20033
Phone: 202-455-4399
Email: lily@rightsbehindbars.org

**VIA ECF**

Patricia S. Dodszuweit, Clerk
U.S. Court of Appeals for the Third Circuit
21400 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106-1790

**Re:** *Jose Montanez v. Paula Price, et al.*
Case Number 23-2669
District Court Case Number 22-CV-01267

Dear Ms. Dodszuweit,

The Commonwealth of Pennsylvania is liable under both Title II of the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA) for violations of these statutes by private contractors the Commonwealth retains. Like all states, the Commonwealth is prohibited from engaging in disability discrimination in its prisons by the ADA. 42 U.S.C. § 12132; *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998). Because the Pennsylvania Department of Corrections accepts federal financial assistance, the RA separately prohibits the same. *See* App. 44 (alleging PDOC accepts federal funds); 29 U.S.C. § 794(a); *Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 161, 171 (3d Cir. 2002) (explaining that state agencies that accept federal funds are bound by the RA in all agency programming). The Commonwealth does not shed these obligations simply because it contracts away its interactions with people with disabilities to a third party. This conclusion is mandated by controlling regulations reflecting the fairest readings of these statutes, contract law principles that guide the interpretation of Spending Clause legislation, and other tools of statutory interpretation. To hold otherwise would frustrate Congress's intent in enacting both Title II of the ADA and the RA.[1]

Every circuit to directly consider the question has held that states retain liability under the Title II of the ADA and the RA for the actions of their contractors or other third-party assignees. *See Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1065–67 (9th Cir. 2010) (examining text of Title III of the ADA and the legislative history of Title II to uphold DOJ regulations that impose Title II and RA liability on states for actions of municipalities that state entrusted with carrying out state prison programming); *Henrietta D. v. Bloomberg*, 331 F.3d 261, 284–87 (2d Cir. 2003) (reasoning from contract law principles to conclude that ADA and RA impose liability on states regardless of whether state assigns duties to third parties); *Marks v. Colorado Dep't of Corr.*, 976 F.3d 1087, 1097 (10th Cir. 2020) (accounting for

---

[1] The Commonwealth suggest in its letter to the Court on this issue that Mr. Montanez did not address state liability in his briefs. Appellee's Supp. Br. at 1. This is incorrect. Mr. Montanez was clear in his briefs that his ADA and RA claims lie against the Commonwealth, not Wellpath directly or any individual defendants. Reply Br. at 2. He premises liability on the knowledge, actions, and omissions of both state employees (e.g. Nurse Wagman and prison administrators) and Wellpath employees (e.g. Dr. Mahli). Op. Br. at 14, 18–19. This letter elaborates on the legal basis underlying state liability for Wellpath employees' discriminatory conduct, but this argument was squarely presented in the original briefing.

ways in which state agencies were involved in administration of parole program run by private contractor, and concluding that state cannot avoid statutory liability solely because it was not directly involved in [the contractor's] decision to [discriminate against the disabled plaintiff]"). This Court should do the same.[2]

Controlling DOJ regulations implementing both Title II and the RA plainly state that states are liable for their contractors' acts of disability discrimination. *See* 28 C.F.R. § 35.130(b)(1) (stating that a public entity may not discriminate "directly *or through contractual, licensing, or other arrangements*") (emphasis added); 28 C.F.R § 41.51 (same, for recipients of federal financial assistance); 28 C.F.R § 35.152 (same, specifically with regard to outfitting prison cells with "accessible elements"); 28 C.F.R. Part 35 App. A ("If a prison is occupied by State prisoners and is inaccessible, the State is responsible under title II of the ADA"); *see also Williams v. Sec'y Pennsylvania Dep't of Corr.*, 117 F.4th 503, 548 (3d Cir. 2024) (recognizing that regulations promulgated pursuant to Title II prohibit covered entities from engaging in disability discrimination through contractual arrangements).

These regulations implement two propositions that are clear from the text of Title II of the ADA and the RA, and that in no way exceed the scope of these statutes. First, the statutory text directly imposes liability for disability discrimination on state actors and recipients of federal funds. 42 U.S.C. § 12132; 29 U.S.C. § 794(a). Second, neither statute contemplates any method through which covered entities may to rid themselves of liability by entering third party contracts. *Id.* The Ninth Circuit considered the above regulations in *Armstrong v. Schwarzenegger* and held that they reflect the "fairest reading of the statute." 622 F.3d at 1067.

The Supreme Court's recent decision in *Loper Bright v. Raimondo* does not diminish the persuasiveness of these regulations. 144 S. Ct. 2244 (2024). Nor does

---

[2] The Commonwealth does not attempt to distinguish these holdings or explain why this Court should create a circuit split by taking a contrary position. Appellees' Supp. Br. at 2–5. Further, the Commonwealth focuses a substantial portion of its supplemental brief on vicarious liability under the ADA and RA, an issue beyond the scope of this Court's order and one which was not raised in initial briefing. *Id.* at 3–4. Vicarious liability is simply not at issue here, because Mr. Montanez explained that he filed grievances about the discriminatory conduct of both Commonwealth and Wellpath employees. Op. Br. at 5, 8. State prison administrators were thus personally aware of the discriminatory conduct of their contractors and did not intervene, creating *direct* liability for ADA and RA violations.

3

it disturb the Ninth Circuit's conclusion in *Armstrong*, after analyzing these regulations, that the ADA and RA impose derivative liability on states. In *Loper Bright*, the Court explained that executive regulations interpreting ambiguous statutes are "entitled to very great respect," particularly when these regulations are "issued roughly contemporaneously with the enactment of the statute." *Id.* at 2257–58. Notwithstanding their persuasive nature, the Court concluded that executive regulations "could inform the judgment of the Judiciary, but did not supersede it," and rejected the deference previously given to regulations interpreting ambiguous statues under *Chevron v. Nataural Resources Defense Council, Inc.,* 467 U.S. 837 (1984). *Loper Bright*, 144 S.Ct. at 2258. Under *Loper Bright,* the DOJ's ADA regulations, adopted just one year after Congress passed the ADA and undisturbed since, are persuasive evidence of Congress's intent. *Compare* Order No. 1512-91, 56 Fed. Reg. 35716 (July 26, 1991); *with* Americans with Disabilities Act of 1990, P.L.101-336 (July 26, 1990). Further, *Armstrong* concluded not only that regulations imposing liability for contractor actions survived with *Chevron* deference, but also that they survived without it, writing that they reflected the "fairest reading of the statute." 622 F.3d at 1067. And, as explained below, the other two circuit opinions to examine this issue, *Henrietta D. v. Bloomberg* and *Marks v. Colorado Department of Corrections*, endorsed state liability for contractor actions after engaging directly in statutory interpretation without invoking *Chevron* deference. 331 F.3d at 284–87; 976 F.3d at 1097.

Looking beyond DOJ's regulations, multiple other Courts of Appeals have persuasively reasoned directly from statutory interpretation principles and held that Title II of the ADA and the RA create derivative state liability for the actions of third parties. Both the Title II of the ADA and the RA contain little text concerning the manner and scope of judicial enforcement. Title II incorporates the remedial scheme from the RA. 42 U.S.C. § 12133. The RA, in turn, incorporates the judicially-implied private right of action under Title VI of the Civil Rights Act of 1964. 29 U.S.C. § 794a. Because of this limited statutory text, courts have looked to underlying legal principles and legislative history to discern intent, both of which support reading these statutes to confer derivative state liability for contractors' actions.

First, because Congress passed the RA pursuant to its Spending Clause power, and Title II of the ADA directly incorporates the RA's judicial enforcement mechanism, the scope of both acts is circumscribed by principles of contract law. *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 317–18 (3d Cir. 2014) ("Title VI, Title IX, the RA and the ADA are all based on the same exercise of congressional power under the Spending Clause"); *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*,

729 F.3d 248, 264 (3d Cir. 2013) ("legislation that is enacted under this power is much in the nature of a contract between the federal government and recipients of federal funds"). Thus, when a state accepts federal financial assistance, it promises, per the RA, to refrain from disability discrimination in its programs and services. *Henrietta D.,* 331 F.3d at 286. Delegation alone does not rid the state of its duty to perform this promise. *See* Restatement of Contracts, Second § 318(3) (explaining that in most circumstances, "neither delegation of performance nor a contract to assume the duty made with the obligor by the person delegated discharges any duty or liability of the delegating obligor."); *see also Henrietta D.,* 331 F.3d at 286 ("An 'obligor'—that is, one who promises performance in exchange for consideration—'cannot rid itself of a duty merely by making an effective delegation.'") (quoting E. Allan Farnsworth, III Farnsworth on Contracts § 11.10 p. 126 (1998)).

Delegation releases the original obligor of its promise "only if the contract so provides or if the obligee makes a binding manifestation of assent, forming a novation." Restatement of Contracts, Second § 318, cmt d. The contract between the Commonwealth and Wellpath contains no reference to the Commonwealth's nondiscrimination obligations under the ADA and RA at all, much less an explicit novation. *See* Contract for Correctional Health Care Services, available at https://contracts.patreasury.gov/Admin/Upload/333074_CCS%20Contract.pdf.[3] And far from a "binding manifestation of assent," the assignee here, Wellpath, has disclaimed any duty under the RA or ADA to refrain from disability discrimination. Medical Defs. Ans. Br. at 19. Thus, under this contract analogy, the Commonwealth remains liable to ensure nondiscrimination in its programs, notwithstanding Wellpath's involvement. *See Henrietta D.*, 331 F.3d at 287 (concluding the same).

Separately, the legislative history of Title II of the ADA supports derivative state liability. In *Armstrong*, the Ninth Circuit cited several committee reports showing the enacting Congress's intent for Title II to mirror the explicit inclusion of derivative liability for contractors' actions in Title I and Title III of the ADA. 622 F.3d at 1067 (quoting H.R. Rep. No. 101–485, pt. 2, at 84 (1990), 1990 U.S.C.C.A.N. 303, 367 ("the Committee intends, however, that the forms of discrimination prohibited by section 202 [of Title II] be identical to those set out in the applicable provisions of titles I and III of this legislation."); H.R. Rep. No. 101–485, pt. 3, 51 (1990), 1990 U.S.C.C.A.N. 445, 474 ("Title II should be read to incorporate

---

[3] *Williams v. Magee*, No. 19-CV-720, 2019 WL 3337085, at *4 (M.D. Pa. July 24, 2019) (courts "may take judicial notice of publicly available documents, including publicly-executed contracts involving governmental entities such as the DOC").

provisions of titles I and III which are not inconsistent with the regulations implementing Section 504 of the Rehabilitation Act of 1973.")). These reports make clear that Congress intended for Title II to impose liability on

      Finally, even if this Court does not hold that the ADA and RA create state liability for contractors' actions in *all* contexts, it should hold that derivative liability exists in the prison context because of the extensive state involvement inherent therein. In *Marks v. Colorado Department of Corrections*, the Tenth Circuit held that derivative liability applies when "a factfinder could reasonably regard the program as the state's." 976 F.3d at 1097. The court held that Colorado remained liable under Title II of the ADA for disability discrimination by a private contractor operating a supervised release program because state agencies "provided funding for community corrections, made referrals to community corrections, created standards for community corrections, maintained custody over all inmates in community corrections, continued to monitor the status of these inmates while in community corrections, and audited community corrections programs." *Id*. Similarly, here, Mr. Montanez was held in a state-run prison and provided medical care by a mix of state employees and doctors employed by a contractor. *See* Commonwealth Def. Ans. Br. at 6 (noting that Nurse Wagman, a state employee, provided "direct medical care"); App. 4–8 (noting that Mr. Montanez was incarcerated in "State Correctional Institutions" operated by the Pennsylvania Department of Corrections). At base, because "[t]he power to incarcerate citizens rests with the State or local government, not a private entity," any program within a state prison is a state program, and state liability under the ADA and RA applies. 28 C.F.R. Part 35 App. A.

      Thus, controlling regulations, principles of statutory interpretation, and unique considerations in the prison context all require state liability for disability discrimination by prison medical contractors. Mr. Montanez has pled facts sufficient to show intentional ADA violations by both state employees, such as Nurse Wagman, and Wellpath employees, including Dr. Mahli. Op. Br. at 14, 18–19. The Commonwealth is liable for disability discrimination perpetrated by employees and contractors alike.

                                                                Respectfully submitted,

                                                                /s/ *Lillian Novak*
                                                                Lillian Novak
                                                                Samuel Weiss
                                                                Rights Behind Bars